Filed 9/11/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSEPH MURL BENNETT,<br><br>      Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>      Respondent;<br><br>THE PEOPLE,<br><br>      Real Party in Interest. | B292368<br><br>(Los Angeles County<br>Super. Ct. No. ZM036257) |

     ORIGINAL PROCEEDING; petition for writ of mandate/prohibition. James Bianco, Judge. Petition granted.

     Rudy G. Kraft, California Appellate Project, under appointment by the Court of Appeal, for Petitioner.

     No appearance for Respondent.

     Jackie Lacey, District Attorney of Los Angeles County, Phyllis C. Asayama and Matthew Brown, Deputy District Attorneys, for Real Party in Interest.

Joseph Bennett filed a writ petition challenging the trial court's finding of probable cause (Welf. & Inst. Code, § 6602, subd. (a))[1] in a Sexually Violent Predators Act (SVPA) (§ 6600 et seq.) proceeding. Bennett contends that the trial court committed prejudicial error by allowing the admission at the probable cause hearing, through expert testimony, of case-specific facts that were inadmissible hearsay under *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). Because consideration of inadmissible case-specific facts was central to the trial court's finding of probable cause, we conclude that the writ petition must be granted.

## BACKGROUND

Prior to the August 2017 probable cause hearing, the People filed a petition to commit Bennett as a sexually violent predator (SVP). At the time, Bennett was nearing the end of a seven-year sentence for failing to register as a sex offender (Pen. Code, § 290, subd. (b)) in 2012. Bennett was initially evaluated by two psychologists, one of whom opined that Bennett met the criteria to be considered an SVP, while the other disagreed. Pursuant to section 6601, subdivision (e), Bennett was reevaluated by two different psychologists, Douglas Korpi and Christopher Matosich. Both Korpi and Matosich prepared reports concluding that Bennett met the criteria for an SVP.[2]

### Expert reports

#### *Predicate offenses*

The reports noted that Bennett had been convicted of "sexually violent offenses" (§ 6600, subd. (b)) with respect to two victims. In August 1986, on two separate occasions, Bennett broke into a house late at night and raped a woman inside. On both occasions, Bennett

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    Bennett's request for judicial notice, filed August 31, 2018, is granted to the extent it requests judicial notice of the trial court record in this matter, and is denied in all other respects.

was under the influence of alcohol.  He was convicted of rape and other offenses.  Bennett was also convicted of a March 1986 burglary; he later acknowledged that this burglary involved an attempted rape.  In 1987, Bennett was sentenced to a total of 42 years 4 months in state prison.  He was released in 2008.

### *The 2012 incident*

Korpi's report recited the contents of a July 2012 Whittier Police Department report, while Matosich's report cited a probation report containing essentially the same information.  According to the police report, on July 2, 2012, a 32-year-old woman spoke to an investigating officer regarding an alleged sexual assault.  The woman told the officer that, on July 1, 2012, she was waiting for a bus when a white man in his 50's offered to give her a ride in his pickup truck.  The woman accepted, and the man told her he first needed to go to his home in Whittier to pick up some things.  When they got to the house in Whittier, she helped the man carry in several bags.  He showed her around the house and when they got to a bedroom, he closed the door, unzipped his pants, and exposed himself.  The woman said, "Stop," but the man forced himself on her, made her orally copulate him, and had vaginal intercourse with her.  The man then told her to take a shower.  The woman left the house and caught a bus home, and went to the hospital the next day.

After reporting the incident to police, the woman identified Bennett's house, and picked him out of a photographic lineup.  A search warrant was served at the house and Bennett was arrested.  According to the police report, when Bennett was arrested, his cell phone had images of what appeared to be child pornography.  Bennett was not registered as living at the house in Whittier, but instead was registered as living at another house in a nearby community.

Bennett was charged with forcible rape, forcible oral copulation, possession of child pornography, and failing to register.  The prosecution eventually dismissed the two rape-related counts because, after repeated attempts, they were unable to relocate the alleged

3

victim. In August 2013, Bennett was acquitted of the child pornography charge, but was convicted of failing to register, which does not qualify as a sexually violent offense. (See § 6600, subd. (b).)

Bennett consistently denied having nonconsensual sex with the woman. In an interview conducted by Korpi, Bennett stated that he met the woman at a gas station and they smoked methamphetamine together. She then went back to the house with him, where, according to Bennett, she willingly performed oral sex on him. Bennett claimed that while she was at the house, the woman, without his knowledge, took $1,800 in cash that his father kept there. Bennett claimed that the woman likely reported a sexual assault "'to cover her tracks.'" Matosich's report also noted that Bennett denied raping the woman.

### *Expert conclusions*

Korpi diagnosed Bennett with "other specified paraphilic disorder (coercive type)."[3] Korpi wrote that, "Had he been arrested only for the offenses in 1986, I would have been reluctant to term him as serial rapist inasmuch as the behavior occurred over a period of less than six months and substance abuse was so prominent during this period of time. At sole issue in this case is whether or not we believe the 2012 rape allegations." Korpi noted that the allegations had been dismissed, but, based on the circumstances and allegations of the 2012 incident, Korpi "tend[ed] to believe the victim," and therefore found that the "rape behavior extended between 1986 and 2012."

Korpi further opined that Bennett was likely to engage in sexually violent criminal behavior as a result of his mental disorder. He based this opinion largely on the use of diagnostic tools, the Static-

---

[3] "''The term *paraphilia* denotes any intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners.'' [Citation.]' [Citation.]" (*People v. Burroughs* (2016) 6 Cal.App.5th 378, 392, fn. 3 (*Burroughs*), quoting Couzens & Bigelow, Cal. Law and Procedure: Sex Crimes (The Rutter Group 2016) § 14:2, p. 14-10.)

4

99R and the Static-2002R, that estimate a defendant's risk of reoffense based on various risk factors. Bennett received a score of seven on the Static-2002R and six on the Static-99R, both in the "well above average" range for risk to reoffend.

Matosich also diagnosed Bennett with "other specified paraphilic disorder--non-consent," noting that Bennett had sexually assaulted women who were strangers, and was detained for indecent exposure when he was 16. Matosich further found that Bennett was likely to engage in sexually violent predatory criminal behavior as a result of his diagnosed mental disorder. Matosich rated Bennett as a five on the Static-2002R ("above average risk"), and a six on the Static-99R ("well above average risk"). In determining Bennett's risk of reoffending, Matosich considered the 2012 incident, finding Bennett had "not been in the community for a significant period of time sex offense free" following his 2008 release from prison.

**Probable cause hearing**

### Preliminary matters

Prior to the probable cause hearing, Bennett's counsel filed a motion in limine to exclude any evidence of the alleged 2012 rape or forced oral copulation. He argued that any record of the 2012 incident was case-specific hearsay not subject to a hearsay exception, and therefore was inadmissible under *Sanchez*.

Bennett's counsel raised the same argument at the beginning of the probable cause hearing, objecting to any mention of a rape allegation in 2012, and asking the court to prohibit expert consideration of the 2012 incident. The trial court overruled the objection in part, finding that the experts could properly rely on the 2012 arrest report in formulating their opinion. The court stated that it would determine admissibility of the details in the report during the course of the hearing.

### The hearing

The details underlying Bennett's prior convictions for sexually violent offenses -- the two separate rapes occurring in August 1986 --

5

were established at the hearing by introduction and admission of a "section 969b packet." (Pen. Code, § 969b.)

Korpi and Matosich both testified at the hearing. Their testimony was consistent with the contents of their reports.

When asked the basis for his determination that Bennett suffers from a paraphilic disorder, Korpi responded, "Primarily the arrests in '86 and in 2012." When questioned further about how the incidents factored into his opinion, Korpi noted there were "sexually aggressive act[s]" and "intense sexual activity" with respect to the 1986 offenses. Korpi reiterated that he also considered the alleged rape from 2012. In describing the 2012 incident, Korpi stated Bennett "was interested in forceful sexual conduct against somebody's will. . . . She was a stranger." The trial court overruled a hearsay objection and motion to strike. It thereafter stated, "I'm allowing the testimony to the extent that it does pertain to fact-specific information. I'm [admitting] it for the limited purpose of explaining Dr. Korpi's opinion."

Korpi continued to testify regarding the 2012 incident and its importance to his opinion. Discussing Bennett, Korpi stated: "Had he been arrested in only '86, I would have been reluctant to say he was a serial rapist, especially given the substance use." Korpi noted that Bennett displayed rape-related behavior between March and August 1986, "[a]nd for a diagnosis we want usually a six-month period, and really for rapists, much longer typically. And when you have substance abuse and only a five-month period, that leads you -- if I didn't have the 2012, I probably wouldn't make the diagnosis. It's too murky." Korpi further testified that Bennett was sexually aroused by acting against a woman's will; he based this opinion on the 1986 incidents and the 2012 incident, "[j]ust so many repeated violations of women." When asked about the importance of the 2012 incident to his diagnosis of paraphilia, Korpi responded, "It makes or breaks the case for me."

In his testimony, Matosich confirmed that he found Bennett had a diagnosable mental disorder that predisposed him to the commission of criminal sexual acts. Matosich's diagnosis of a paraphilic disorder

6

was "based upon a pattern of offending in sexually aberrant ways over significant periods of time. I saw indications from 1986 through 2012 where there was behavior that supports sexually deviant fantasies and urges." The trial court overruled an objection as to testimony regarding the 2012 incident. Matosich was questioned further about the 2012 incident, and stated that it involved conduct similar to that engaged in by Bennett in 1986. Matosich testified, over an overruled objection, that the 2012 incident supported his conclusion that Bennett engaged in sexual aggression and force upon female victims who were strangers. The "underlying facts and the similarities" in the 2012 incident to the 1986 incidents factored into his opinion that Bennett suffered from a paraphilic disorder. Matosich added that Bennett had a lack of volitional control, again basing this opinion, in part, on the 2012 incident. After a long period of incarceration for the 1986 offenses, following release "he's again engaged in sexually aberrant behavior," and "there was demonstrations of aggression that was similar to demonstrations of aggressions on earlier counts."

After the testimony was given, the court stated, in general terms, that it would not admit case-specific facts in the expert reports unless they were based on predicate offenses or statements made by Bennett himself. After further argument regarding the admissibility of case-specific facts, particularly relating to the 2012 incident, the trial court took the matter under submission.

### The trial court's ruling

The trial court issued its ruling from the bench on August 29, 2017: it would not consider any case-specific facts contained in the experts' reports, and it was striking any case-specific information related by the experts during their testimony.

Nevertheless, when making its finding of probable cause, the trial court emphasized the importance of the 2012 incident to the diagnosis of paraphilia: "I'm particularly focusing on the level of violence and aggression with regard to Mr. Bennett's prior conduct and secondly with regard to the fact that the last incident was perpetrated

7

after a long incarceration. And so I think, in particular, Dr. Korpi's analysis is well supported and I think sufficient for purposes of the probable cause hearing." In response to a question by counsel regarding what the court was considering concerning the 2012 incident, the court stated: "The fact that there was an offense that was perpetrated in 2012. . . . I understand he wasn't convicted of that, but I think the experts could have taken into consideration the underlying facts. They did take that into consideration and it was part of their analysis, which I found sufficient to support their diagnosis that Mr. Bennett suffers from a paraphilic disorder."

The court concluded by stating that, based on the evidence presented, it found probable cause to believe that Bennett had been convicted of a qualifying sexually violent offense, suffers from a diagnosable mental disorder, that the disorder makes it likely he will engage in sexually violent criminal conduct if released, and that the conduct would be predatory in nature.

**Writ petition**

On August 31, 2018, Bennett filed a petition for writ of habeas corpus in this court contending that the trial court's finding of probable cause was fundamentally erroneous. Bennett argued that the experts improperly relied on the 2012 incident in forming their opinions, that the trial court improperly allowed the experts to relate facts from the 2012 incident, and that the trial court improperly considered the 2012 incident in making its probable cause determination.

We issued an order to show cause why Bennett's petition should not be granted, deeming it a petition for writ of mandate or prohibition because it directly challenged the propriety of a trial court order. A return and a traverse were filed, which we have considered along with the petition.

**DISCUSSION**

**I. The SVPA**

The SVPA "allows for the involuntary commitment of certain convicted sex offenders, whose diagnosed mental disorders make them

8

likely to reoffend if released at the end of their prison terms." (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 235 (*Cooley*).) The commitment commences if, following a trial, a "judge or a unanimous jury finds beyond a reasonable doubt that the person is an SVP [citations]." (*Id.* at p. 243, fn. omitted.) Section 6600, subdivision (a)(1) defines an SVP as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." The People must also prove that the sexually violent criminal behavior the offender is likely to engage in will be predatory. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1186 (*Hurtado*).)

### A. Relevant procedure

SVP proceedings begin prior to an offender's release from prison. When an offender is determined to be a potential SVP, he or she is referred to the State Department of State Hospitals for a "full evaluation." (§ 6601, subd. (b).) The offender is then evaluated by two mental health professionals. (§ 6601, subds. (c), (d).) If both professionals concur "that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the Director of State Hospitals forwards a request for a petition for civil commitment. (§ 6601, subd. (d).) If only one professional concludes that the offender meets the criteria stated in section 6601, subdivision (d), then the Director of State Hospitals arranges for further examination by two independent mental health professionals. (§ 6601, subd. (e).) If both independent professionals concur that the offender meets the criteria, a petition to request commitment is filed. (§ 6601, subd. (f).)

Once the petition is filed a superior court judge reviews it to determine whether, on its face, the petition contains sufficient facts that, if true, would constitute probable cause "to believe that the

individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.)

If the judge makes such a finding, a probable cause hearing is set. (*Cooley, supra,* 29 Cal.4th at p. 245; § 6602.) At the probable cause hearing, the judge "shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. The person named in the petition shall be entitled to assistance of counsel at the probable cause hearing. . . . If the judge determines there is not probable cause, he or she shall dismiss the petition and any person subject to parole shall report to parole. If the judge determines that there is probable cause, the judge shall order that the person remain in custody in a secure facility until a trial is completed . . . ." (§ 6602, subd. (a).) The probable cause hearing is "analogous to a preliminary hearing in a criminal case; both serve to ""weed out groundless or unsupported charges . . . and to relieve the accused of the degradation and expense of a . . . trial."'" [Citation.] Like a criminal preliminary hearing, the only purpose of the probable cause hearing is to test the sufficiency of the evidence supporting the SVPA petition. [Citation.]" (*Cooley,* at p. 247.)

### B. SVP elements

#### 1. Conviction of a sexually violent offense

The first element of an SVP determination is that the person "has been convicted of a sexually violent offense against one or more victims." (§ 6600, subd. (a)(1).)[4] The existence of prior qualifying convictions and the details underlying the commission of these offenses may be established by documentary evidence, as made admissible by section 6600, subdivision (a)(3). Such documentary evidence includes "preliminary hearing transcripts, trial transcripts, probation and

---

[4]     Qualifying predicate offenses under the SVPA are listed in section 6600, subdivision (b).

10

sentencing reports, and evaluations by the State Department of State Hospitals." (§ 6600, subd. (a)(3).)

Section 6600, subdivision (a)(3) creates a hearsay exception allowing for admission of the documentary evidence described in the statute, as well as multiple-level-hearsay statements contained therein, to prove a prior qualifying conviction. (*People v. Otto* (2001) 26 Cal.4th 200, 207-208 (*Otto*).) The purpose of this expansive hearsay exception is to relieve victims of the burden of testifying about the details of the crimes underlying the prior convictions. (*Id.* at p. 208.)

"The existence of a prior conviction for a sexually violent offense may also be established by documentary evidence" under Penal Code section 969b. (*People v. Roa* (2017) 11 Cal.App.5th 428, 444 (*Roa*).) "Penal Code section 969b allows the admission into evidence of records or certified copies of records 'of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which' the defendant has been imprisoned to prove that a person has been convicted of a crime." (*Id.* at p. 444.)

### 2. Diagnosed mental disorder

The second element, "'[d]iagnosed mental disorder,'" is defined as including "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).) This element is proven by the testimony of mental health experts who render a diagnosis that the offender suffers from such a mental disorder. (*People v. Yates* (2018) 25 Cal.App.5th 474, 478 (*Yates*).)

### 3. Likelihood of reoffending

The third element the People must prove is that the offender, if released, will likely engage in sexually violent criminal behavior due to the diagnosed mental disorder. (§ 6600, subd. (a); *People v. Roberge* (2003) 29 Cal.4th 979, 988.) The offender must "present a *substantial danger*, that is, a *serious and well-founded risk*, of committing such crimes if released from custody." (*People v. Roberge*, at p. 988,

11

fn. omitted.)  The likelihood of a defendant to reoffend is generally established by expert testimony, which is usually based on the use of diagnostic tools, such as the Static-99, to predict future violent sexual behavior.  (*Roa, supra,* 11 Cal.App.5th at p. 445.)  The People must also show that the sexually violent criminal behavior the offender is likely to engage in will be predatory.  (*Hurtado, supra,* 28 Cal.4th at p. 1186.)

## II.  Inadmissible case-specific hearsay

### A.  Applicable law

#### 1.  Standard of review and general legal principles

A trial court's evidentiary rulings, including those involving the hearsay nature of evidence, are reviewed for abuse of discretion.  (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)  A trial court ruling that rests on an error of law is an abuse of discretion.  (*People v. Patterson* (2017) 2 Cal.5th 885, 894; *Yates, supra,* 25 Cal.App.5th at pp. 484-485.)

Hearsay is generally inadmissible, unless it falls under an exception.  (Evid. Code, § 1200, subds. (a), (b); *Sanchez, supra,* 63 Cal.4th at p. 676.)  One exception to the hearsay rule is that an expert's testimony has traditionally not been barred when it involves the expert's general knowledge in his or her field of expertise.  (*Sanchez,* at p. 676.)  Thus, Evidence Code section 801, subdivision (b) allows an expert to render an opinion "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."  Evidence Code section 802 provides that an expert "may state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training, and education) upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion."  On the other hand, Evidence Code section 803 provides that the court "may, and

upon objection shall, exclude testimony in the form of an opinion that is based in whole or in significant part on matter that is not a proper basis for such an opinion."

As noted above, another hearsay exception in SVP proceedings is found in section 6600, subdivision (a)(3), which allows for the introduction of certain documentary evidence, and multiple-level-hearsay statements contained therein, to prove the details of a prior qualifying conviction. (*Otto, supra,* 26 Cal.4th at pp. 207-208.) This hearsay exception is limited in scope; it does not allow for the introduction of hearsay evidence to prove the details of non-predicate offenses under the SVPA or alleged offenses that did not result in conviction. (*Ibid.*; *Burroughs*, *supra*, 6 Cal.App.5th at pp. 409-411.)

### 2. *Sanchez*

Prior to *Sanchez,* "the general rule was that 'out-of-court statements offered to support an expert's opinion are not hearsay because they are not offered for the truth of the matter asserted. Instead, they are offered for the purpose of assessing the value of the expert's opinion.' [Citation.]" (*Burroughs, supra,* 6 Cal.App.5th at p. 405.) *Sanchez* similarly noted that "some courts have attempted to avoid hearsay issues by concluding that statements related by experts are not hearsay because they 'go only to the basis of [the expert's] opinion and should not be considered for their truth.' [Citations.]" (*Sanchez, supra,* 63 Cal.4th at pp. 680-681.) This practice, however, conflicted with the rule that "an expert has traditionally been precluded from relating *case-specific* facts about which the expert has no independent knowledge." (*Id.* at p. 676.) *Sanchez* thus declared the practice improper, explaining: "When an expert relies on hearsay to provide case-specific facts, considers the statements as true, and relates them to the jury as a reliable basis for the expert's opinion, it cannot logically be asserted that the hearsay content is not offered for its truth. In such a case, 'the validity of [the expert's] opinion ultimately turn[s] on the truth' [citation] of the hearsay statement. If the hearsay

that the expert relies on and treats as true is *not* true, an important basis for the opinion is lacking." (*Id.* at pp. 682-683.)

*Sanchez* explicitly prohibited the introduction by an expert of case-specific hearsay: "What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Sanchez, supra,* 63 Cal.4th at p. 686.) Based on this holding, the court found that case-specific statements related by a gang expert concerning the defendant's gang membership were inadmissible hearsay, because "[t]hey were recited by the expert, who presented them as true statements of fact, without the requisite independent proof." (*Id.* at p. 670.)

The court in *Sanchez* noted that expert testimony could properly encompass certain matters that would generally be subject to exclusion as hearsay: "Our decision does not call into question the propriety of an expert's testimony concerning background information regarding his knowledge and expertise and premises generally accepted in his field." (*Sanchez, supra,* 63 Cal.4th at p. 685.) Further, "Any expert may still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so. Because the jury must independently evaluate the probative value of an expert's testimony, Evidence Code section 802 properly allows an expert to relate generally the kind and source of the 'matter' upon which his opinion rests. A jury may repose greater confidence in an expert who relies upon well-established scientific principles. . . . There is a distinction to be made between allowing an expert to describe the type or source of the matter relied upon as opposed to presenting, as fact, case-specific hearsay that does not otherwise fall under a statutory exception." (*Sanchez*, at pp. 685-686.)

### 3. *Sanchez* application to SVP proceedings

*Sanchez* has repeatedly been held to apply in SVP proceedings. (See, e.g., *Roa, supra,* 11 Cal.App.5th at p. 452; *Yates, supra,* 25 Cal.App.5th at p. 483; *Burroughs, supra,* 6 Cal.App.5th at pp. 410-411; *People v. Flint* (2018) 22 Cal.App.5th 983, 995-998.)

14

In *Burroughs*, the People established the existence and details of the defendant's qualifying sexually violent offenses through the introduction of various materials, certain contents of which fell under the section 6600, subdivision (a)(3) exception. (*Burroughs, supra,* 6 Cal.App.5th at pp. 409-410.) The documentary evidence, however, also contained information regarding the defendant's personal history, including details of uncharged sex offenses the defendant allegedly committed. (*Id.* at p. 410.) The appellate court concluded that this type of information should have been excluded: "much of the documentary evidence upon which the experts relied was hearsay that was not shown to fall within a hearsay exception. The trial court accordingly erred by allowing the experts to testify to the contents of this evidence as the basis for their opinions." (*Id.* at p. 411) Because these evidentiary errors were prejudicial, the judgment adjudicating the defendant an SVP was reversed. (*Id.* at pp. 412-413.)

In *Roa,* we found that expert testimony regarding case-specific facts of the defendant's qualifying predicate offenses was admissible because the facts underlying these offenses were independently proven by documentary evidence admitted under section 6600, subdivision (a)(3). (*Roa, supra,* 11 Cal.App.5th at p. 450.) We determined the trial court erred, however, in allowing experts to testify regarding statements contained in a report prepared by a district attorney investigator regarding events that occurred decades earlier, including an arrest of the defendant for alleged sexual assault that did not result in conviction. (*Id.* at p. 452.) "The experts in this case testified extensively about case-specific facts they obtained from the investigator's reports and treated those facts as true and accurate to support their opinions. The investigator's reports themselves were not admitted into evidence, and there is no other evidence of the case-specific facts concerning [the earlier incidents]. Admission of expert testimony relating case-specific facts about these incidents was error. [Citation.]" (*Ibid.*) In finding prejudice due to this admission of hearsay, we noted that the People's expert testified that he relied on

15

the incidents contained in the investigator's report in diagnosing the defendant with paraphilia and other disorders.  (*Ibid*.)

And, in *Yates*, we found that the trial court erred in allowing the People's experts to relate case-specific facts drawn from documents "that were neither introduced or admitted into evidence, nor shown to fall within a hearsay exception."  (*Yates, supra,* 25 Cal.App.5th at p. 485.)  We rejected an argument that it was unnecessary to admit the documents underlying the experts' opinions because *Sanchez* permits an expert to rely on hearsay.  (*Yates*, at p. 485.)  Even though some of the records at issue would have been admissible if introduced under section 6600, subdivision (a)(3) because they related to predicate offenses, the fact that the records were not properly introduced prevented the experts from testifying to their contents.  (*Yates*, at pp. 485-486.)

We further found the experts' testimony relating case-specific hearsay prejudicial:  "Without the inadmissible hearsay, the foundation for the experts' opinions goes up in smoke, and with it most of the evidence in support of the jury's SVP finding."  (*Yates, supra,* 25 Cal.App.5th at pp. 486-487.)  We noted:  "'California has long recognized that an expert's opinion cannot rest on his or her qualifications alone:  "even when the witness qualifies as an expert, he or she does not possess a carte blanche to express any opinion within the area of expertise.  [Citation.]  For example, an expert's opinion based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], has no evidentiary value [citation] and may be excluded from evidence."  [Citation.] . . .' [Citation.]"  (*Id.* at p. 487.)

### B.  The instant case

Bennett contends that the trial court erred by allowing expert testimony of case-specific facts relating to the 2012 incident, and that the trial court improperly relied on the incident in finding probable cause.  We agree.

No documentary or other evidence was used to prove the details of the 2012 incident. Instead, the details were introduced through testimony of the People's experts and were also recounted in the reports prepared by the experts. The experts, however, had no independent knowledge of the 2012 incident. Bennett was interviewed by both experts, but he consistently denied having nonconsensual sex with the alleged victim. There was no admissible evidence introduced to substantiate the 2012 allegation, and accordingly the experts had no basis to testify regarding the 2012 incident. An expert may not "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Sanchez, supra,* 63 Cal.4th at p. 686; see also *Roa, supra,* 11 Cal.App.5th at p. 452; *Yates, supra,* 25 Cal.App.5th at p. 485.)

Moreover, even if the People had attempted to introduce documentary evidence containing details regarding the alleged 2012 sexual assault, such as the police report or probation report relied on by the experts, there does not appear to be any discernible ground for deeming the documents admissible. Section 6600, subdivision (a)(3) allows for introduction of documentary evidence, and hearsay contained therein, but only to prove the details of qualifying predicate offenses. (*Otto, supra,* 26 Cal.4th at pp. 207-208; *Burroughs, supra,* 6 Cal.App.5th at pp. 409-411.) Bennett was never convicted of the alleged sexual assault in 2012. And the offense for which he was convicted -- failing to register as a sex offender (Pen. Code, § 290, subd. (b)) -- is not a qualifying "sexually violent offense" under section 6600, subdivision (b). The details underlying the offense for which Bennett was convicted do not fall under section 6600, subdivision (a)(3)'s hearsay exception.

The trial court made a variety of statements in response to Bennett's hearsay and related *Sanchez* objections regarding the alleged 2012 sexual assault. At one point, the trial court stated it was allowing testimony regarding the 2012 incident "for the limited purpose of explaining Dr. Korpi's opinion." This ruling directly conflicted with

*Sanchez's* elimination of the untenable practice of deeming statements related by experts "not hearsay because they 'go only to the basis of [the expert's] opinion and should not be considered for their truth.' [Citations.]" (*Sanchez, supra,* 63 Cal.4th at pp. 680-681.) The trial court also overruled other objections made on the basis of *Sanchez.*

Eventually, as a preface to its ultimate finding of probable cause, the trial court stated it would not consider case-specific facts contained in the experts' reports, and that it was striking any case-specific information related by the experts during their testimony. But then the court specifically relied on the 2012 incident in issuing its probable cause ruling. In finding Korpi's analysis "well supported and . . . sufficient" the trial court focused on "the fact that the last incident," i.e., the 2012 incident, "was perpetrated after a long incarceration." The court reiterated the "fact that there was an offense that was perpetrated in 2012" and that the experts took "that into consideration and it was part of their analysis, which I found sufficient to support their diagnosis that Mr. Bennett suffers from a paraphilic disorder."

The 2012 incident was material to the court's finding of probable cause. First, the court found that Korpi's analysis was supportable because of the 2012 incident, and, second, the court found the "fact that there was an offense that was perpetrated in 2012" supported both experts' paraphilia diagnoses. Despite the court's prior statement that it was striking all case-specific information, it focused on the 2012 incident in finding the paraphilia diagnosis adequately proven. This consideration of the 2012 incident was improper because the incident was never proven by competent evidence and it did not fall under a hearsay exception. It was introduced only by way of the experts' testimony and reports, and so could not be accorded weight as evidence.

The significance of the 2012 incident was emphasized by Korpi, who, when asked about its importance to his diagnosis of paraphilia, responded, "It makes or breaks the case for me." This testimony clarified that, without consideration of the 2012 incident, the paraphilia diagnosis would not have been made.

18

Consideration of the 2012 incident underpinned the trial court's finding that the People made an adequate showing of the second SVP element, that Bennett suffered from a "diagnosed mental disorder" as defined by section 6600, subdivision (c).  From the trial court's ruling (and Korpi's testimony), it is clear that if the 2012 incident had not been introduced into the proceedings, there would have been no finding of probable cause as to this second element.  Furthermore, the third element -- that the offender will likely engage in sexually violent criminal behavior due to the diagnosed mental disorder (§ 6600, subd. (a)) -- is necessarily dependent on proof of a diagnosed mental disorder.  Since admissible evidence to prove both of these elements was lacking, the trial court's finding of probable cause was not supported by substantial evidence.[5]

## III.  Probable cause hearing

The People contend that the evidence presented was sufficient to satisfy the burden required at the probable cause hearing, and that the hearsay rule and *Sanchez* should not be applied at a probable cause hearing.

The scope of the probable cause hearing is the same as an eventual SVP trial.  (*Cooley, supra,* 29 Cal.4th at p. 247.)  The standard the superior court applies when making its ruling at a probable cause hearing is whether "a reasonable person *could entertain a strong suspicion* that the petitioner has satisfied all the elements required for a civil commitment as an SVP . . . ."  (*Id.* at p. 236.)  As already noted, the probable cause hearing serves to """"weed out groundless or unsupported charges . . . .""""  (*Id.* at p. 247.)  The sufficiency of the

---

[5]     Bennett also argues that the experts could not properly rely on the 2012 incident as a basis for their diagnosis that Bennett suffers from a diagnosable medical disorder that makes it likely he will engage in sexually violent criminal conduct.  Because we find that there would have been no finding of probable cause without the trial court's consideration of the 2012 incident, we need not reach this argument.

evidence supporting the SVP petition is thus tested at the probable cause hearing, as it is at a preliminary hearing in a criminal case. (*Ibid.*)

The prosecution's burden at the probable cause hearing is to prove all the elements that must be proven at trial. (*Cooley, supra,* 29 Cal.4th at p. 257.) The standard of review applied by an appellate court in reviewing a probable cause determination is the same as that used in reviewing a ruling made at a preliminary hearing. (*Ibid.*) The reviewing court draws every inference in favor of the superior court's factual findings and does not substitute its judgment regarding the credibility of witnesses or the weight of the evidence. (*Id.* at p. 258.) "The resolution of mixed questions of law and fact, like probable cause, usually is examined independently [citation], and the resolution of a question of fact, like any such question underlying probable cause, always is examined for substantial evidence [citation]." (*Id.* at p. 257.)

Key to the analysis here is whether the trial court's finding of probable cause was supported by substantial evidence. As discussed above, the trial court's ruling was premised on the occurrence of the 2012 incident. But no admissible evidence was introduced to establish the 2012 incident. Thus, even under the relatively lenient standards that apply at a probable cause hearing, the trial court's finding of probable cause was not supported by substantial evidence.

The People argue that formal rules of evidence, including the hearsay rule, do not apply at the probable cause hearing, and therefore *Sanchez* has no application at this stage of the proceedings. The People cite to *In re Parker* (1998) 60 Cal.App.4th 1453 (*Parker*) in support of this proposition. In *Parker*, in a matter of first impression, the court examined the procedural nature of a probable cause hearing under the then-recently enacted SVPA. (*Id.* at p. 1455.) The *Parker* court found that the probable cause hearing requires more than a mere "paper review," and that a purported SVP is entitled to "an opportunity to be fully heard on the issue of probable cause at that hearing." (*Id.* at p. 1466.) The *Parker* opinion also stated: "While we believe the

prosecutor may present the opinions of the experts through the hearsay reports of such persons, the prospective SVP should have the ability to challenge the accuracy of such reports by calling such experts for cross-examination." (*Id.* at pp. 1469-1470.)

The People contend that the *Parker* court, by stating that an expert's opinion may be presented through the expert's hearsay report, held that the hearsay rule has no function at a probable cause hearing. We do not agree that such a broad pronouncement was made. The *Parker* court further found that the defendant could "challenge the facts on which the petition was filed, i.e., the underlying . . . experts' evaluations," including thorough cross-examination of the experts. (*Parker, supra,* 60 Cal.App.4th at p. 1468, fn. omitted.) *Cooley* made a similarly circumscribed statement regarding the admissibility of hearsay at the preliminary hearing, citing *Parker's* holding that expert reports may be presented despite their hearsay nature but that the defendant is allowed to challenge the accuracy of the experts' evaluations at the hearing. (*Cooley, supra*, 29 Cal.4th at p. 245, fn. 8.)

We believe that a challenge to the admissibility of a key piece of evidence upon which the experts relied and testified to is consistent with *Parker* and *Cooley's* findings that a defendant may challenge the accuracy of the expert reports at the probable cause hearing. The issue in this matter is not simply whether the prosecution may present an expert's conclusions at the probable cause hearing through the introduction of the expert's report. Instead, the issue is whether a defendant may challenge the introduction of case-specific hearsay by an expert who has no personal knowledge of such facts and that is not subject to a hearsay exception. Bennett objected to the introduction of hearsay evidence -- the 2012 incident -- that formed the basis of the experts' conclusions and the trial court's finding of probable cause. Giving effect to *Cooley's* rule that the purpose of the probable cause hearing is to """"weed out . . . unsupported charges""""" (*Cooley, supra,* 29 Cal.4th at p. 247), we find that Bennett could properly challenge the

21

admissibility of this case-specific hearsay that was material to the probable cause determination.

Furthermore, to the extent (if any) that *Parker* could have been read as allowing the prosecution at a probable cause hearing to introduce otherwise inadmissible case-specific hearsay evidence solely through the testimony and reports of its experts, such a reading would not pass muster following *Sanchez*. *Sanchez* explained that an expert may not relate as true "case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Sanchez, supra,* 63 Cal.4th at p. 686.) As discussed above, the 2012 incident was not independently proven and it was not subject to a hearsay exception.[6] There was no basis for either expert "to supply case-specific facts about which he has no personal knowledge. [Citation.]" (*Id.* at p. 676.) The only method by which the 2012 incident was introduced at the hearing was through the testimony of the experts, a practice prohibited by

_____

[6] Proposition 115, adopted by voters in 1990, allowed for admissibility of certain hearsay evidence in the analogous setting of a preliminary hearing in a criminal proceeding. (Cal. Const., art. I, § 30, subd. (b).) In particular, at a preliminary hearing, "the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer . . . relating the statements of declarants made out of court offered for the truth of the matter asserted." (Pen. Code, § 872, subd. (b).) An officer may so testify, however, only if he or she has "'sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement.' [Citation.]" (*Correa v. Superior Court* (2002) 27 Cal.4th 444, 452.) This limited rule of hearsay admissibility does not assist the People here. Regardless of whether the rule may apply in an SVP proceeding, the People's experts are not law enforcement officers and so would not qualify to testify under Penal Code section 872, subdivision (b), and, most germanely, they have no independent knowledge of the 2012 incident or the circumstances under which a police report or other statement was made.

22

*Sanchez*. Nothing in the procedural rules gives the trial court at a probable cause hearing authority to admit and consider material, case-specific hearsay, not subject to an exception, solely on the basis that it is related by an expert. We find no justifiable reason to avoid application of the hearsay rule or *Sanchez* simply because we are reviewing a finding made at a probable cause hearing.

It is true that, given the lesser burden for a probable cause hearing than what is required at trial -- that a reasonable person could entertain a strong suspicion all elements are satisfied, rather than proof beyond a reasonable doubt -- not all *Sanchez* violations at a probable cause hearing are likely to be prejudicial. If the only problem with admission of the 2012 incident was that it was inflammatory, for example, then reversal would likely not be required. There is less reason to worry about the possibility of a judge being swayed by the inflammatory nature of information at a preliminary stage than there is with a trial jury making the ultimate SVP determination. Or, if the 2012 incident was one of many pieces of information relied on by the experts, and was not significant to their opinion or the trial court's probable cause finding, then admission of the evidence would likely not be deemed prejudicial.

But, here, the case-specific hearsay regarding the 2012 incident was introduced by the experts, was necessary to their opinions, and was critical to the trial court's ruling. The 2012 incident was not independently proven, and there is no reason to believe that any admissible proof of the incident would be presented at a trial in this matter. Thus, at trial, as here, key evidence needed to establish the second and third elements of the SVP determination would be lacking.[7]

---

[7] Because we find that Bennett is entitled to relief on this basis, we do not reach his alternative contention that he received ineffective assistance of counsel at the probable cause hearing. We note, however, that Bennett's counsel repeatedly objected on *Sanchez* and hearsay grounds, the primary basis for our opinion here.

Since the People failed to meet their burden of proof at the probable cause hearing, and the trial court's finding of probable cause is not supported by substantial evidence, the SVP petition must be dismissed.  (§ 6602, subd. (a).)

## DISPOSITION

The petition is granted.  A writ of mandate hereby issues directing the trial court to vacate its August 29, 2017 order finding probable cause and to enter a new and different order finding there is not probable cause, and to accordingly dismiss the SVP petition pursuant to section 6602.  The stay of trial court proceedings issued November 9, 2018, is dissolved.

**CERTIFIED FOR PUBLICATION.**

_____, J.
CHAVEZ

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST