Filed 7/23/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B279863 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. ZM017426) |
| v. | |
| DAVID YATES, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County.  Suzette Clover, Judge.  Reversed and remanded.

Rudy G. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez, Steven E. Mercer, and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This case presents the following issue: May an expert relate as true the case-specific content of documents which were neither admitted into evidence nor shown to be covered by a hearsay exception? We conclude under *People v. Sanchez* (2016) 63 Cal.4th 665, 684–686 (*Sanchez*), that such testimony is inadmissible.

A jury found David Yates (Yates) to be a sexually violent predator (SVP) under the Sexually Violent Predators Act (the SVP Act or the Act). (Welf. & Inst. Code, § 6600 et seq.)[1] Yates contends the jury's finding must be overturned because the trial court committed numerous prejudicial errors under *Sanchez*, including erroneously permitting the experts to testify to a massive amount of inadmissible case-specific hearsay. We agree that the trial court misapplied *Sanchez* and erroneously allowed the People's experts to relate as true case-specific facts contained in hearsay statements, which were not covered by a hearsay exception or independently proven by competent evidence. (*Sanchez*, *supra*, 63 Cal.4th at p. 686.) Because that testimony was prejudicial, we reverse.

**PROCEDURAL HISTORY**

On April 21, 2011, the Los Angeles County District Attorney filed a petition to commit Yates as a sexually violent predator under the SVP Act. The trial court found probable cause to hold Yates over for trial, and a jury trial commenced on November 8, 2016. The jury returned a verdict finding Yates to be a sexually violent predator as alleged in the petition. The trial

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

court ordered him committed to the California Department of
Mental Health for an indeterminate term.

**DISCUSSION**

## I.  The SVP Act

The SVP Act allows for the involuntary civil commitment of
certain offenders following the completion of their prison terms
who are found to be sexually violent predators.  (*People v.
Roberge* (2003) 29 Cal.4th 979, 984 (*Roberge*).)  An alleged SVP is
entitled to a jury trial, at which the People must prove three
elements beyond a reasonable doubt:  (1) the person has suffered
a conviction of at least one qualifying "sexually violent offense,"
(2) the person has "a diagnosed mental disorder that makes the
person a danger to the health and safety of others," and (3) the
mental disorder makes it likely the person will engage in future
predatory acts of sexually violent criminal behavior if released
from custody.  (§§ 6600, 6603, 6604; *People v. Shazier* (2014) 60
Cal.4th 109, 126; *People v. McKee* (2010) 47 Cal.4th 1172, 1185.)

Under section 6600, subdivision (a)(3), the People may
prove the first element—the existence and details underlying the
commission of the predicate offense(s)—"by introducing
'documentary evidence, including, but not limited to, preliminary
hearing transcripts, trial transcripts, probation and sentencing
reports, and evaluations by the State Department of State
Hospitals.' "[2]  (*People v. Burroughs* (2016) 6 Cal.App.5th 378, 403

---

[2] Penal Code section 969b also "allows the admission into
evidence of records or certified copies of records 'of any state
penitentiary, reformatory, county jail, city jail, or federal
penitentiary in which' the defendant has been imprisoned to
prove that a person has been convicted of a crime," including a

3

(*Burroughs*); *Roa, supra*, 11 Cal.App.5th at p. 443.) The Act thus contains a broad hearsay exception for the documentary evidence described in the statute as well as for the multiple-level hearsay statements contained in such documents in order "to relieve victims of the burden and trauma of testifying about the details of the crimes underlying the prior convictions," which may have occurred many years in the past. (*People v. Otto* (2001) 26 Cal.4th 200, 208 (*Otto*); *Roa, supra*, at pp. 443–444.)

The Act defines the diagnosed mental disorder required for the second element as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c); *Roa, supra*, 11 Cal.App.5th at p. 444.) To establish this element, the People will have one or more experts evaluate the person, review documentary evidence (such as state hospital records, police and probation reports, and prison records), and render a diagnosis. (§ 6603, subd. (c)(1); *Roa, supra*, at pp. 444–445.) This process may be repeated multiple times over several years in order to satisfy the requirement that, at the time of trial, the person has "a currently diagnosed mental disorder." (§ 6600, subd. (a)(3); see *People v. Landau* (2013) 214 Cal.App.4th 1, 26 [an SVP case "requires a *current* mental condition"].)

For the third element, the People must show that, if released, the alleged SVP will likely engage in sexually violent

---

sexually violent offense. (*People v. Roa* (2017) 11 Cal.App.5th 428, 444 (*Roa*).)

4

criminal behavior due to the diagnosed mental disorder. (§ 6600, subd. (a)(3); *People v. Shazier*, *supra*, 60 Cal.4th at p. 126.) The Act requires proof of a clear link between the second and third elements; that is, the finding of future dangerousness must be shown to derive from "a currently diagnosed mental disorder characterized by the inability to control dangerous sexual behavior." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1158; *People v. White* (2016) 3 Cal.App.5th 433, 448.) Again, in the SVP trial the People will present expert testimony—usually based on diagnostic tools that predict future violent sexual behavior—to establish the alleged SVP's dangerousness and likelihood to reoffend. (*Roa, supra*, 11 Cal.App.5th at p. 445.)

## II. The Relevant Background

### A. *Pretrial proceedings*

Prior to trial, Yates's counsel filed a motion in limine under *Sanchez* to preclude the People's experts from relating to the jury as the basis for their opinions the contents of state hospital records, the opinions and conclusions of non-testifying experts including hospital staff, hearsay statements regarding other allegations of criminal conduct by Yates, and hearsay information relating to a parole violation. At the hearing on Yates's motion, the trial court inquired about the People's anticipated expert testimony in this case. The district attorney responded that she intended to elicit testimony from her experts limited to material that would be presented under section 6600, subdivision (a), the business or official records exception to the hearsay rule, and matters that arose from the experts' own conversations with Yates.

The prosecutor argued that the hospital records that had been subpoenaed were business records and their content was

admissible.  Defense counsel responded that the hospital records were extremely voluminous and may not all qualify for admission under the business or official records exception.  The court indicated it was uncertain about the extent to which multiple layers of hearsay could be admitted simply because it "happened to be in a business record," but noted, "We're talking in a vacuum generally.  But if it comes up, counsel, I'm sure you'll object."  The trial court and parties then moved on to discuss other evidentiary issues, and the court never clearly ruled on the admissibility of the documents or the permissible scope of the expert testimony under *Sanchez*.  During trial, the People did not establish that any of appellant's records from which the experts had obtained their information were covered by a specific hearsay exception.

B. *Expert testimony at trial*

The People called two licensed psychologists to testify as expert witnesses in Yates's SVP trial:  Dr. Wesley Maram and Dr. Douglas Korpi.  Both experts opined that Yates qualifies as a sexually violent predator based on interviews with him, his scores on sex offender risk assessments, and the experts' review of his extensive state hospital file and criminal and juvenile records going back over 40 years.

*Dr. Maram*

Dr. Maram testified that appellant was convicted of four qualifying offenses when he was 18 years old in 1982, including two counts of oral copulation by force and two counts of sodomy by force against a 16-year-old boy.  The expert described the details of the incident and opined that the crimes qualified under California law as sexually violent offenses.  Appellant was convicted, served part of an eight-year prison sentence, and was paroled.  According to appellant's criminal records, he violated

6

parole by hitting a woman over the head with a bat. Dr. Maram also described the details of a 1988 qualifying offense in which appellant forced oral copulation and sodomized a 13-year-old boy when appellant was 24. Appellant was sentenced to prison for 21 years for that offense. Dr. Maram reported that appellant threatened his victims on both occasions with a knife. The expert then summarized details of appellant's social history and other criminal offenses, including the facts underlying a sustained juvenile petition which alleged appellant had forced oral copulation and sodomized two nine-year-old boys. Dr. Maram also informed the jury that Yates's other criminal history includes "burglary and one or two thefts."

Dr. Maram diagnosed appellant with "pedophilic disorder," defined as "intense and persistent[ly] occurring sexually arousing fantasies and behaviors towards [prepubescent] children generally under age 14." He founded this diagnosis on appellant's "young history of molesting children" and appellant's statements during his interview.

In his review of appellant's hospital records, Dr. Maram learned that while in the California State Hospital at Coalinga, appellant has subscribed to Barely Legal, a publication containing photographs of people over 18 who dress and appear much younger. Dr. Maram identified two sample pages from the magazine but admitted that appellant had never mentioned the publication, and he had no idea when appellant had the subscription or how long he had it. Nevertheless, Dr. Maram opined that appellant's subscription to a magazine that depicts very young potential sexual partners was a significant factor in diagnosing pedophilic disorder because it suggests an ongoing sexual attraction to young or very young children. Dr. Maram

7

characterized appellant's interest in the magazine as "high risk behavior," and agreed with the hospital's recommendation that appellant not subscribe to the magazine, because a sex offender like appellant "doesn't need to be stimulated by sexualized [images] of children to remind him of his urges and his desire to have sex with young children."

Dr. Maram further diagnosed Yates with antisocial personality disorder, which is marked by the commission of offenses as symptoms of a conduct disorder before the age of 15. He explained that appellant "has a full background of criminal offenses" and antisocial behaviors, starting with running away at age 11, progressing to his arrest at age 14 for the sexual offenses against the two nine-year-olds, and culminating in the commission of more sexually violent crimes as an adult.

Dr. Maram used the Static-99R and Static-2002R risk assessment tools to evaluate appellant's recidivism risk. The results of both tests placed appellant in a high risk category for reoffending. Dr. Maram noted that appellant has not been free in the community for any significant period of time without reoffending. And according to appellant's hospital records, he has adamantly refused to participate in any form of sex offender treatment or other therapy, despite it being offered and encouraged by hospital staff.

*Dr. Korpi*

Dr. Korpi testified that appellant is a sexually violent predator. He based his conclusion on his 2014 interview with appellant and evaluation of appellant's criminal and psychosexual history and the history and severity of his deviance as reflected in appellant's voluminous hospital file, criminal records, and prior SVP reports.

8

Like Dr. Maram, Dr. Korpi described the details of the qualifying sexually violent offenses for which appellant had been convicted in 1982 and 1988. Based on the circumstances of those offenses together with appellant's entire personal, criminal and medical history, Dr. Korpi concluded that appellant suffers from antisocial personality disorder and a paraphilia[3] with features of both pedophilia and sadism. The expert substantiated his diagnosis by citing details of appellant's sexually violent conduct: He described the juvenile offense in which appellant sodomized and forced two nine-year-olds to orally copulate him at knifepoint when appellant was 13; he related details about appellant's 1982 and 1988 offenses from the probation reports that revealed particularly sadistic behavior; and he related the facts reported in the parole charge sheet from appellant's 1987 parole violation in which appellant assaulted his cousin with a bat. Dr. Korpi deemed Yates's subscription to Barely Legal to be somewhat significant in showing appellant continues to have an "interest in younger looking people."

In support of his diagnosis of antisocial personality disorder, Dr. Korpi recited details of appellant's troubled background, including his mother's mental illness, appellant's criminal conduct before the age of 15, and his adult history

---

[3] " ' "The term *paraphilia* denotes any intense and persistent sexual interest other than sexual interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature, consenting human partners." (DSM-V, p. 685.)' (Couzens & Bigelow, Cal. Law and Procedure: Sex Crimes (The Rutter Group 2016) ¶ 14:2, p. 14-10.)" (*Burroughs*, *supra*, 6 Cal.App.5th at p. 392, fn. 3.)

involving arrests for burglary, theft, sex offenses, assault, and two parole violations. Dr. Korpi stated that according to appellant's records, Yates is "proud of what a good con man he is," he failed sexual offender treatment twice, and he has received 11 write-ups while in custody. Indeed, "[Yates] is so by his own rules that he decided he wouldn't brush his teeth and all his teeth fell out."

Based on appellant's extensive history and his scores on the Static-99R and the Static-2002R, Dr. Korpi opined that appellant represents a serious and well-founded risk of reoffending in the future. In particular, appellant's history of parole and probation violations and the fact that appellant has failed treatment are strong indicators of his likelihood to reoffend.

## III. The Pertinent Law

### A. *General legal principles*

Hearsay, defined as an out-of-court statement by someone other than the testifying witness offered to prove the truth of the matter stated, is generally inadmissible unless it falls under an exception. (Evid. Code, § 1200, subds. (a), (b); *Sanchez, supra,* 63 Cal.4th at p. 674; *People v. Zamudio* (2008) 43 Cal.4th 327, 350.) Documents like reports, criminal records, hospital records, and memoranda—prepared outside the courtroom and offered for the truth of the information they contain—are usually themselves hearsay and may contain multiple levels of hearsay, each of which is inadmissible unless covered by an exception. (*Sanchez,* at p. 675.)

Although expert witnesses frequently acquire knowledge in their field of expertise from hearsay sources, "[t]he hearsay rule has traditionally not barred an expert's testimony regarding his general knowledge in his field of expertise." (*Sanchez, supra,* 63

10

Cal.4th at p. 676.) Thus, an expert witness may offer opinions based on any matter, including special knowledge, skill, experience, training, and education, "whether or not admissible, that is of a type that reasonably may be relied upon" by experts in the field. (Evid. Code, § 801, subd. (b).) And prior to *Sanchez*, an expert witness was also permitted to relate case-specific hearsay to the jury, as long as the jury was instructed that it could only consider the expert's recitation of such information for its effect on the expert's opinion, and not for its truth. (*People v. Bell* (2007) 40 Cal.4th 582, 608, overruled by *Sanchez, supra*, 63 Cal.4th at p. 686, fn. 13; *People v. Montiel* (1993) 5 Cal.4th 877, 918–919, overruled by *Sanchez, supra*, at p. 686, fn. 13; *People v. Coleman* (1985) 38 Cal.3d 69, 92, overruled by *Sanchez, supra*, at p. 686, fn. 13; *People v. Dean* (2009) 174 Cal.App.4th 186, 197 [applying these rules in SVP proceedings].)

B. *Sanchez*

In *Sanchez*, our Supreme Court ended this practice and abandoned the "not-admitted-for-its-truth rationale" with respect to case-specific hearsay. (*People v. Stamps* (2016) 3 Cal.App.5th 988, 994.) *Sanchez* preserved an expert's ability to rely on and cite "background information accepted in [his or her] field of expertise," as well as an expert's ability to rely on and "tell the jury *in general terms*" that he or she relied upon hearsay evidence. (*Sanchez, supra*, 63 Cal.4th at p. 685.) But an expert's recitation of case-specific facts, which *Sanchez* defined as "those relating to the particular events and participants alleged to have been involved in the case being tried," is a different matter. (*Id.* at p. 676.) *Sanchez* held that an expert is prohibited from testifying to such facts if they are outside the expert's personal knowledge and do not fall under an exception to the hearsay rule

or have not been independently established by competent evidence.  (*Id.* at pp. 676–677, 686.)

Thus, like any other hearsay evidence, case-specific hearsay an expert relates to the jury as true is not admissible unless a proper foundation has been laid for its admission under an applicable hearsay exception.  "Alternatively, the evidence can be admitted through an appropriate witness and the expert may assume its truth in a properly worded hypothetical question in the traditional manner."  (*Sanchez*, *supra*, 63 Cal.4th at p. 684, fn. omitted; *People v. Jeffrey G.* (2017) 13 Cal.App.5th 501, 510.)  However, an underlying fact that has not been proven by independent admissible evidence may not be included in a hypothetical question posed to the expert.  (*Sanchez,* at pp. 677, 686; *Stamps*, *supra*, 3 Cal.App.5th at p. 996.)

C.  *The application of* Sanchez *to SVP proceedings*

*Sanchez* is not confined to criminal cases.  In particular, courts have held *Sanchez* applicable to SVP proceedings in several published opinions, including our own decision in *Roa*, *supra*, 11 Cal.App.5th 428.  (See *People v. Flint* (2018) 22 Cal.App.5th 983, 998–999, 1005; *People v. Bocklett* (2018) 22 Cal.App.5th 879, 890; *Burroughs*, *supra*, 6 Cal.App.5th 378.)

In *Burroughs*, the People proved the existence and facts of Burroughs's qualifying sexually violent offenses by presenting documentary evidence made admissible by Welfare and Institutions Code section 6600, subdivision (a)(3), including a Penal Code "section 969b prison packet" and probation reports that recited the facts underlying the qualifying convictions.  (*Burroughs*, *supra*, 6 Cal.App.5th at p. 403.)  Because the existence and details of the predicate offenses had been independently established by admissible documentary evidence,

12

*Burroughs* concluded that "the experts were permitted to relate the facts to the jury as the basis of their opinions," consistent with *Sanchez*. (*Ibid*.)

But the court found that not all of the information contained in the documentary evidence was relevant or admissible to prove the qualifying offenses. (*Burroughs, supra,* 6 Cal.App.5th at pp. 410–411.) Such information included references to uncharged offenses and other conduct, as well as information about appellant's prior record, his personal history, his health, education, and employment, and the terms and conditions of probation. (*Id*. at p. 410.) This information, the court concluded, constituted inadmissible hearsay, and the trial court had "erred by allowing the experts to testify to the contents of this evidence as the basis for their opinions." (*Id*. at p. 411.) With respect to the hospital records, *Burroughs* noted that none had been introduced or admitted at trial, and therefore "any statements the experts made about the contents of those records as 'the basis for their opinions' necessarily were improper under *Sanchez*. The experts were permitted to rely on those records, and to rely on any reports other experts such as appellant's treating personnel prepared. [Citations.] They could not testify to the contents of those reports, however." (*Id*. at p. 407, fn. 7.)

*Burroughs* found the evidentiary errors to be prejudicial and reversed the judgment. (*Burroughs, supra*, 6 Cal.App.5th at pp. 412–413.) The court found that through the admission of numerous hearsay documents and the experts' testimony relating "a significant amount of hearsay to the jury," the People had presented "in lurid detail, numerous sex offenses that appellant was not charged with or convicted of committing," which served to depict "appellant as someone with an irrepressible propensity

to commit sexual offenses, and invited the jury to punish him for past offenses." (*Id*. at p. 412.) In short, the court concluded, "the improperly admitted hearsay permeated the entirety of appellant's trial and strengthened crucial aspects of the People's case," requiring reversal. (*Ibid*.)

Similarly, in *Roa*, we found the trial court had erred in admitting expert testimony which related case-specific facts about uncharged offenses and other conduct drawn from investigator reports that were not subject to any hearsay exception. (*Roa*, *supra*, 11 Cal.App.5th at p. 452.) In addition, the Attorney General conceded error in the trial court's admission of expert testimony relating information contained in Roa's state hospital records, which had not been shown to be admissible under a hearsay objection. (*Ibid*.) Finding the erroneous admission of the hearsay testimony to be prejudicial, we reversed the judgment. (*Id*. at pp. 454–455; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## IV. Improper Admission of Hearsay Through Expert Testimony in the Instant Proceedings

Yates contends the trial court erred in admitting inadmissible hearsay through expert testimony which related to the jury the content of documents that were never admitted into evidence and never shown to meet the prerequisites for admission under an applicable hearsay exception. We review the court's evidentiary rulings—including those that turn on the hearsay nature of the evidence—for abuse of discretion (*People v. Waidla* (2000) 22 Cal.4th 690, 725), keeping in mind that an abuse of discretion occurs when the trial court makes an error of law (*People v. Patterson* (2017) 2 Cal.5th 885, 894).

A. *Expert testimony relating case-specific facts from Yates's state hospital, criminal, and juvenile records*

Here, except for Yates's own statements to the experts, which were admissible as party admissions (Evid. Code, § 1220), all of the case-specific facts related by the experts were drawn from documents—Yates's criminal, juvenile, and state hospital records—that were neither introduced or admitted into evidence, nor shown to fall within a hearsay exception. Applying *Sanchez* to the instant case, we therefore conclude that the trial court erred in admitting inadmissible hearsay in the form of expert testimony which related case-specific facts to the jury that were neither subject to a hearsay exception nor independently established by competent evidence.[4] (*Sanchez, supra*, 63 Cal.4th at pp. 676–677, 686.)

Contradicting the concessions the People made in *Roa* (11 Cal.App.5th at p. 452), respondent maintains that it was not necessary to admit the documents from which the experts in this case testified because *Sanchez* still permits an expert to *rely* on hearsay in forming an opinion, and only bars the expert from

---

[4] Yates identifies at least 31 examples of expert testimony that related case-specific hearsay to the jury which was not independently established by competent evidence or covered by an applicable hearsay exception in accordance with *Sanchez*. However, because no foundation was laid for admission of *any* of the records from which the experts gleaned their information, we need not address each instance individually to find error in the trial court's admission of the expert testimony. (See *Roa, supra*, 11 Cal.App.5th at p. 452; *Burroughs, supra*, 6 Cal.App.5th at p. 407, fn. 7.)

15

relating as true case-specific facts asserted in hearsay statements if those statements are not covered by any hearsay exception. (See *Sanchez*, *supra*, 63 Cal.4th at pp. 685–686.) Here, the People argue, admission of the expert testimony was consistent with *Sanchez* because the records from which the experts testified were themselves *admissible* under section 6600, subdivision (a)(3) and under the business and official records exceptions to the hearsay rule.

Respondent is correct in the general assertion that many of Yates's criminal records would have been admissible under the hearsay exception created by section 6600, subdivision (a)(3), had they been introduced. As our Supreme Court has observed, the statute specifically authorizes the use of hearsay to show the details underlying the commission of a predicate offense. (*Otto*, *supra*, 26 Cal.4th at pp. 206–207.) More recently, however, the high court has observed this hearsay exception applies only to "admission of *documentary evidence*, not expert testimony." (*People v. Stevens* (2015) 62 Cal.4th 325, 338.) Because the hearsay exception under section 6600, subdivision (a)(3) is limited to documentary evidence to show the existence and details of a qualifying offense, and no such documentary evidence was presented or admitted in this case, the experts simply could not testify to the contents of Yates's criminal records. (See *Roa*, *supra*, 11 Cal.App.5th at p. 452; *Stamps*, *supra*, 3 Cal.App.5th at p. 996.)

The People are similarly mistaken in their contention that the expert testimony about the contents of Yates's hospital and other records was admissible because the underlying records were admissible under the business or official records exception to the hearsay rule.

Hospital records and similar documents are often admissible as business records, assuming a custodian of records or other duly qualified witness provides proper authentication to meet the foundational requirements of the hearsay exception. (Evid. Code, § 1271; *In re R.R.* (2010) 187 Cal.App.4th 1264, 1280; *People v. Landau* (2016) 246 Cal.App.4th 850, 872, fn. 7.) Compliance with a subpoena duces tecum may dispense with the need for a live witness to establish the business records exception if the records are produced by the custodian or other qualified witness, together with the affidavit described in Evidence Code section 1561. (Evid. Code, § 1560, subd. (b); *In re R.R.*, at p. 1280; *In re Troy D.* (1989) 215 Cal.App.3d 889, 903.) In this case, however, no such foundation was laid for any of the documents contained in the "three-to-five [foot] high stack of records" from which the experts testified. Moreover, contrary to the People's assertion, the mere fact that state hospital files had been subpoenaed did not make their entire contents reliable or otherwise admissible as business records. (See *People v. Blagg* (1968) 267 Cal.App.2d 598, 609–610 [in the absence of live testimony of a qualified witness, affidavit of an authenticating witness is required in order to lay a proper foundation for admissibility].)

In sum, there was no blanket hearsay exception for the experts' testimony to the case-specific hearsay contained in documents which were neither presented to the court for an evidentiary ruling nor admitted into evidence. Admission of expert testimony relating case-specific hearsay to the jury that was neither subject to a hearsay exception nor independently established by competent evidence was error.

17

B. *Prejudice*

Admission of the experts' hearsay testimony in this case was unquestionably prejudicial.  Except for a few admissions Yates made to the experts during interviews, none of the experts' testimony relating case-specific facts to the jury was admissible.  Without the inadmissible hearsay, the foundation for the experts' opinions goes up in smoke, and with it most of the evidence in support of the jury's SVP finding.

"California has long recognized that an expert's opinion cannot rest on his or her qualifications alone:  'even when the witness qualifies as an expert, he or she does not possess a carte blanche to express any opinion within the area of expertise.  [Citation.]  For example, an expert's opinion based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], has no evidentiary value [citation] and may be excluded from evidence.'  [Citation.]  California courts have been particularly chary of expert testimony based on assumptions that are not supported by the evidentiary record:  'an expert's opinion that something could be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist in the case before the jury, does not provide assistance to the jury because the jury is charged with determining what occurred in the case before it, not hypothetical possibilities.' " (*People v. Wright* (2016) 4 Cal.App.5th 537, 545.)

Had the experts' inadmissible testimony been excluded, we find it reasonably probable—indeed likely—the jury would have reached a result more favorable to Yates.  (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

## V. Forfeiture and Ineffective Assistance of Counsel

During trial, the People neither presented nor did the trial court admit into evidence any hospital records or other documents which were the sources of the case-specific hearsay the experts related to the jury.  And when the prosecution experts repeatedly recited case-specific facts gleaned from Yates's three-to-four-foot high stack of hospital and criminal records, defense counsel did not once object under *Sanchez* or, except on two occasions, on any hearsay ground at all.  Respondent asserts that by failing to raise the issue below, Yates forfeited any claim that the People were required to lay a foundation for the admissibility of the records upon which the experts relied before the experts could testify to the contents of the documents.  We are inclined to agree.

However, Yates contends that counsel's failure to object violated his federal and state constitutional rights to effective assistance of counsel.  (See *People v. Ledesma* (1987) 43 Cal.3d 171, 215; *Strickland v. Washington* (1984) 466 U.S. 668, 684.)  To prevail on this claim, appellant "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice."  (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)  "When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, [appellant] must show that there was ' " 'no conceivable tactical purpose' " for counsel's act or omission.' "  (*Id.* at p. 675.)  Reversal is then required if it is reasonably probable " 'that, but for counsel's unprofessional errors, the result of the

19

proceeding would have been different.' " (*People v. Banks* (2014) 59 Cal.4th 1113, 1170, overruled in part on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391; *Strickland, supra,* 466 U.S. at p. 694.)  "[A] ' " 'reasonable probability is defined as one that undermines confidence in the verdict.' " ' " (*People v. Carrasco* (2014) 59 Cal.4th 924, 982.)

By filing a motion in limine to exclude certain expert testimony under *Sanchez*, Yates's counsel clearly demonstrated familiarity with *Sanchez*'s prohibition on an expert's recitation of case-specific hearsay.  Because none of the criminal, juvenile, or state hospital records was admitted into evidence or shown to fall under an applicable hearsay exception, and none of the case-specific facts related by the experts was proven by other competent evidence, *Sanchez* barred the experts from relating the contents of those documents to the jury.  Defense counsel therefore should have objected to every instance in which the People's experts related as true case-specific facts contained in hearsay statements which were not shown to fall within a hearsay exception or were not independently proven by competent evidence.  (*Sanchez, supra,* 63 Cal.4th at p. 686.)

We can conceive of no satisfactory explanation for defense counsel's failure to object to the experts' testimony in this case. And given the clear prejudice caused by the admission of volumes of incompetent expert testimony, it is reasonably probable that had the trial court sustained appropriate objections under *Sanchez*, the result in Yates's SVP trial would have been different.  (*People v. Banks, supra,* 59 Cal.4th at p. 1170.)

20

## DISPOSITION

The judgment is reversed, and the matter remanded to the trial court.

Pursuant to Business and Professions Code section 6086.7, subdivision (a)(2), the Clerk of this court is directed to send a certified copy of this opinion to the State Bar upon issuance of the remittitur in this matter.  The Clerk shall also notify defense counsel, Deputy Public Defender Todd Montrose, that he has been referred to the State Bar.  (*Id.*, § 6086.7, subd. (b).)

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.


21