Filed 1/6/21  P. v. Spear CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BILLY SPEAR,<br><br>        Defendant and Appellant. | A158302<br><br>(Lake County<br>Super. Ct. No. CR952216) |

Billy Spear was committed to the Department of State Hospitals for an indefinite term after a jury found him to be a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (SVPA).[1]  On appeal, he contends that his commitment cannot stand because there was insufficient evidence that his diagnosed mental disorder predisposes him to commit sexually violent crimes.  We affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

Spear has schizoaffective disorder, bipolar type, which is "a combination of a mood disorder with psychosis."  In particular, he

---

[1] Welfare and Institutions Code, section 6600 et sequitur.  All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

"experiences mania . . . mixed with auditory or visual hallucinations and delusion." He began showing symptoms of the disorder in the early 1990's, when he was in his twenties.

The "sexually violent offense" qualifying Spear as an SVP occurred in Sonoma County in 2010. Spear followed a female stranger on the street and, when she stopped at a crosswalk, he "smiled at her and said 'pussy.'" He also called her "Daphne," an "apparent reference to a female character in the Scooby Doo cartoon." She tried to walk away from him, but he "grabbed" her, pushed her against a fence, and "was fondling and groping her" as she resisted. At one point, he "pushed on her vagina and slightly inserted his finger in her vagina" through her clothes.

As a result of this incident, Spear was convicted of genital penetration under Penal Code section 289, subdivision (a)(1), and sentenced to three years in prison. After serving this term, he was found to be a mentally disordered offender and returned to a state hospital for treatment. He was paroled in 2014 but failed to register as a sex offender, and he quickly returned to prison.

A few months after Spear was again paroled, in mid-2016, a woman was riding a bus in Lake County when Spear boarded and "kept trying to talk to [her]" as she ignored him. Spear then sat by her and "lunge[d] at [her] and tried to kiss [her]" but did not actually touch her. As a result of this incident, he was convicted of false imprisonment under Penal Code section 236 and sentenced to four years in prison.

In November 2018, shortly before Spear was due to be paroled, the People filed a petition seeking Spear's indefinite commitment to a state hospital as an SVP. The trial court found probable cause existed for the commitment, and a jury trial was held in August 2019. At trial, evidence was

2

presented about several of Spear's other crimes in addition to the 2010 genital penetration and the 2016 false imprisonment.

In 1994, while "in a psychotic state," Spear stabbed his mother and her dog. He was charged with attempted murder but found not guilty by reason of insanity, and he spent the next few years in a state hospital receiving treatment.

Over a decade later, in 2007, Spear approached a woman who was in her car near an ATM in Butte County. After asking her whether she had a boyfriend and telling her she was pretty, Spear forced his way into the car and "[got] on top of her," putting his hand on her thigh. Spear was charged with carjacking, but he was ultimately convicted only of misdemeanor battery under Penal Code section 242.

In 2009, Spear beat up a homeless woman in San Francisco. He told the police that "he thought that maybe it was an undercover police officer and it was really a male." Spear was convicted of battery with serious bodily injury under Penal Code section 243, subdivision (d).

In addition, three female correctional officers testified about incidents that occurred shortly after Spear was jailed in early 2010 for the genital penetration. First, when Spear was being booked, he motioned for one of the officers to approach, "pulled out his penis[,] and started masturbating" while saying "[t]hat he was going to get at [her] or get [her]." He was also "making these very disturbing facial gestures like sticking his tongue out and wagging his tongue back and forth." On another occasion, when the same officer opened a food port to deliver breakfast, Spear "placed his penis on the food port and then continue[d] to masturbate" and say "he was going to get [her] and . . . that [she] like[d] it, that [she] want[ed] it."

3

Second, another officer testified that when she opened a food port to deliver dinner, Spear "was standing in the doorway right at the food port masturbating" and "kind of leering at [her]." He did not stop when she ordered him to do so.

Finally, a third officer testified that on one occasion Spear called her over to his cell. When she approached, he was masturbating and "thrusting his hips" while "his eyes look[ed] at [her] and his mouth was doing this thing." He did not stop when she told him to do so, and he again masturbated and tried to make eye contact with her when she did her rounds later that night. Spear was charged with indecent exposure as a result of the incidents in jail, but he was found incompetent to stand trial.

Four psychologists testified as experts at the SVP trial: Drs. Charles Flinton, Robert Owen, Shoba Sreenivasan, and Christopher North. All four experts agreed that Spear had schizoaffective disorder and posed an above-average risk of sexually reoffending if released. Drs. Flinton, Owen, and Sreenivasan opined that Spear's schizoaffective disorder made him likely to engage in sexually violent behavior, but Dr. North disagreed. Accepting the opinion of the first three experts, the jury found that Spear was an SVP, and the trial court ordered him committed to a state hospital for an indefinite term.

II.
DISCUSSION

A. *General Legal Standards*

To support a person's commitment under the SVPA, the People must prove beyond a reasonable doubt that the person is an SVP. (§ 6604.) This requires a jury or court to find that the person has been convicted of a sexually violent offense against at least one victim and has a "diagnosed mental disorder that makes [him or her] a danger to the health and safety of

4

others in that it is likely that he or she will engage in sexually violent criminal behavior" if released from custody. (§ 6600, subd. (a)(1); *People v. Yates* (2018) 25 Cal.App.5th 474, 477.) A " '[d]iagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

We review a person's commitment as an SVP for substantial evidence. (*People v. Poulsom* (2013) 213 Cal.App.4th 501, 518.) " 'Under this standard, [we] "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [the person is an SVP] beyond a reasonable doubt." ' " (*Ibid.*)

> B. *There Was Substantial Evidence that Spear's Mental Disorder Predisposed Him to Engage in Sexually Violent Behavior.*

> 1. Additional background

We begin by discussing in more detail the expert testimony about whether Spear's schizoaffective disorder predisposed him to engage in sexually violent behavior. The experts generally agreed that the disorder hindered Spear's ability to manage his behavior and impulses. This was especially evident because Spear was "unable to control his behavior despite repeatedly experiencing negative legal and [other] consequences," and he acted out even "in a very structured locked setting." Although the symptoms of schizoaffective disorder can be managed with medication, Spear admitted, and his record confirmed, that he did not consistently take his medication. Indeed, he was not on medication during any of the crimes described, with the exception of the 2016 false imprisonment. Dr. Owen observed that "this

5

is a man who either doesn't completely respond well to his medications or doesn't consistently take them and some of these psychotic symptoms appear."

In addition, while schizoaffective disorder "does [not] necessarily entail a propensity to commit sex crimes," Dr. Flinton testified that Spear's disorder "manifests in sexually violent behavior." The psychologist explained that "in this particular case, there's a clear pattern . . . [of] hostility towards women. [Spear] has delusions and thoughts about them and inability to control himself. And a script is acted out with making comments to women, ignoring their resistance, and pursuing them despite the consequences and . . . the suffering to the victim."

Similarly, Dr. Owen opined that Spear's "problems fall into two categories[,] . . . violence or sex." The psychologist observed that Spear's most recent crimes—the carjacking, the genital penetration, the indecent exposures, and the false imprisonment—"all had sexual elements. So . . . his poor self-control now seems to affect his sexual impulses. And these crimes were very impulsive, and they were sexual, and he was very out of control." And Dr. Sreenivasan testified that Spear's disorder "has rendered him psychotic and hypersexual at various times, and under episodes of psychosis, he acts out. And the energy of hypersexuality that the bipolar piece adds, he acts out in a sexually[]assaultive manner towards females."

Dr. North, in contrast, opined that "if the schizoaffective [disorder] really . . . predisposed [Spear] to commit sex crimes, we would have much more evidence of arrests for sex offenses and for sexually[]violent offenses over the 30 years that he suffered with [the] disorder than we have." Although Spear "gets psychotic, and he becomes inappropriate, and he

6

becomes aggressive at times with women," Dr. North believed his behavior "f[e]ll short of what we normally have in . . . [SVP] cases."

### 2. Analysis

Spear claims that there was insufficient evidence that his mental disorder "predisposes him to commit sexually violent predatory criminal acts, as opposed to random criminal acts of all sorts." While he admits that "it is likely that [he] might commit either a sexually[]motivated, or sexually inappropriate, or violent act in the future," he argues that since "[t]he evidence presented consisted of crimes that were either sexual or violent, but not both," there was no showing that he was a "sexually violent predator" within the meaning of section 6600.

To begin with, section 6600 plainly requires that a person have been convicted of only *one* "sexually violent offense" to qualify as an SVP. (§ 6600, subd. (a)(1).) Spear does not contest that the 2010 genital penetration qualified as a sexually violent offense. (See § 6600, subds. (a)(2)(A), (b).) Although "[c]onviction of one or more crimes enumerated in [section 6600] . . . shall not be the sole basis for the determination" that a person is an SVP (§ 6600, subd. (a)(3)), this provision does not mean that such a determination requires evidence of more than one qualifying offense, as Spear seems to suggest. Rather, it means merely that a jury may not determine that a person is an SVP solely "based on prior offenses," as there must also be "relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(3).)

Nor can we agree with Spear's implication that a person must have committed multiple sexually violent offenses in order to be found likely to

7

commit such offenses in the future.  We will assume that, with the exception of the 2010 genital penetration, none of his crimes qualified as a "sexually violent offense" under section 6600.  But several of them involved both sexual and violent components, and expert testimony specifically linked this criminal behavior to his mental disorder.  Indeed, there was ample evidence that Spear's disorder impeded his ability to control his behavior, especially when, as was often the case, he failed to take his medication.  The fact that Spear's uncontrolled behavior was simultaneously aggressive and sexual on several occasions, even if only one of his crimes rose to the level of a "sexually violent offense," provided a sufficient basis to conclude that his mental disorder predisposed him to commit sexually violent crimes if released.

Finally, we reject Spear's cursory claim that "the State failed to provide evidence that [he] is any kind of 'predator,' sexual or otherwise." Section 6600 defines "predatory" as describing "an act directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization."  (§ 6600, subd. (e).)  With the exception of Spear's attack on his mother, the described crimes were committed against strangers, making them classic "predatory" offenses.

### III.
#### DISPOSITION

The judgment is affirmed.

8

_____

Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

Sanchez, J.

*People v. Spear*  A158302

9