Filed 11/21/24  P. v. Yates CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID YATES,<br><br>    Defendant and Appellant. | B326359<br><br>(Los Angeles County<br>Super. Ct. No. ZM017426) |

APPEAL from an order of the Superior Court of Los Angeles County.  Dorothy L. Shubin, Judge.  Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

David Yates appeals the order committing him as a sexually violent predator (SVP) under the Sexually Violent Predators Act (the SVPA).  (Welf. & Inst. Code, § 6600 et seq.)  Appellant contends substantial evidence does not support the trial court's judgment that appellant qualifies as an SVP.  We disagree and affirm.

## PROCEDURAL BACKGROUND

### A. *The predicate crimes*

On April 14, 1982, when he was 18 years old, appellant sexually assaulted a 16-year-old boy at knifepoint.  A jury convicted appellant on September 8, 1982, of two counts of oral copulation by force (Pen. Code,[1] § 288a, subd. (c)), two counts of sodomy by force (§ 286, subd. (c)), and one count of assault with a deadly weapon (§ 245, subd. (a)).

On May 25, 1988, appellant sexually assaulted a 13-year-old boy, threatening to shoot and kill the boy and members of his family if he did not comply with appellant's demands or told anyone about the assault.  On November 14, 1988, a jury convicted appellant sodomy by use of force (§ 286, subd. (c)), forcible oral copulation (§ 288a, subd. (c)), and committing a forcible lewd act with a child (§ 288, subd. (b)).

### B. *The prior proceedings*

On April 21, 2011, the Los Angeles County District Attorney filed a petition to commit appellant as a sexually violent predator under the SVPA.  (*People v. Yates* (2018) 25 Cal.App.5th 474, 477 (*Yates*).)  The matter was tried before a jury, which returned a verdict finding appellant to be a sexually violent predator as alleged in the petition.  (*Id.* at p. 476.)  On appeal

---

[1] Undesignated statutory references are to the Penal Code.

from that judgment, we reversed and remanded for a new trial. (*Id.* at p. 488.)

Appellant waived his right to a jury, and following a bench trial, the court determined that appellant qualifies as a sexually violent predator under Welfare and Institutions Code sections 6600 et seq. The trial court ordered appellant committed to the California Department of State Hospitals (DSH) for an indeterminate term.

## C. *Trial testimony*

Two expert witnesses testified for the People: Dr. Charles Flinton, a forensic psychologist working as a contractor on DSH's SVP evaluator panel, and Dr. Alette Coble-Temple, a consulting psychologist for DSH.

Dr. Flinton interviewed appellant on July 6, 2021, and reviewed documents provided by DSH and the Department of Corrections and Rehabilitation (CDCR). Appellant refused another interview with Dr. Flinton in 2022. Dr. Coble-Temple was assigned to evaluate appellant and completed two separate reports in 2021 and 2022. She interviewed appellant once in 2021, but appellant refused a second interview in 2022. For both the 2021 and 2022 evaluations, Dr. Coble-Temple reviewed documents provided by DSH and CDCR, including documents from Coalinga State Hospital and information regarding appellant's qualifying offenses.

Dr. Christopher Fisher, a clinical forensic psychologist, testified as an expert for appellant. Dr. Fisher was hired in 2014 as the defense evaluator and wrote a number of reports between 2014 and 2022. As part of these evaluations, he met with appellant five times in person, and twice over the phone. In preparation for each evaluation, Dr. Fisher reviewed appellant's

court, CDCR, and hospital records.

Four other witnesses testified on appellant's behalf. Three had contact with appellant in the course of their employment at Coalinga. All three testified that appellant was a diligent and reliable worker and had a good work ethic. He was always courteous and cooperative and behaved appropriately in social activities. His demeanor was friendly, and he was never observed expressing anger or aggression toward any staff members.

The fourth witness, William Thiel, testified as a release plan witness for appellant. Thiel was 81 years old, living in Clovis, California. He had been a patient at Coalinga for many years until his release in February 2017. Before that, he had been at Atascadero State Hospital, where he met appellant in the late 1990's. Thiel and appellant became friends, and following Thiel's release, he spoke with appellant every night on the phone. Thiel believed that if appellant were released and lived with him, appellant would have no trouble finding and keeping a job and would be able to share household expenses. Thiel planned to support appellant financially until appellant could get a job. Thiel lived in a mobile home park for senior citizens. No children lived in the park, but residents could have their grandchildren visit and have gatherings and parties.

Appellant would live in the second bedroom of Thiel's two-bedroom mobile home. Thiel would not be telling appellant what to do, but he would expect appellant to comply with all laws, and make sure appellant registered as a sex offender in a timely manner. During his time at Coalinga, Thiel participated in sex offender treatment twice a week and found it helpful. Thiel was aware that appellant had very strong feelings about not

4

discussing his past and was unwilling to participate in group therapy. He acknowledged that tension and frustration would arise between them whenever Thiel tried to encourage appellant to get into treatment. Nevertheless, if appellant were released, Thiel would encourage him to join Sex Offenders Anonymous, and if appellant were willing to enter therapy in the community, Thiel would assist him in finding a therapist.

## DISCUSSION

**Substantial Evidence Supports the Trial Court's Determination that Appellant Is a Sexually Violent Predator**

### A. *Relevant legal principles*

#### 1. *The SVPA*

As we explained in appellant's prior appeal, "[t]he [SVPA] allows for the involuntary civil commitment of certain offenders following the completion of their prison terms who are found to be sexually violent predators. [Citation.] An alleged SVP is entitled to a jury trial, at which the People must prove three elements beyond a reasonable doubt: (1) the person has suffered a conviction of at least one qualifying 'sexually violent offense,' (2) the person has 'a diagnosed mental disorder that makes the person a danger to the health and safety of others,' and (3) the mental disorder makes it likely the person will engage in future predatory acts of sexually violent criminal behavior if released from custody. [Citations.]" (*Yates, supra,* 25 Cal.App.5th at p. 477.)

The SVPA "requires the trier of fact to find that an SVP is dangerous at the time of commitment"; that is, "he 'currently' suffers from a diagnosed mental disorder which prevents him from controlling sexually violent behavior, and which 'makes' him

5

dangerous and 'likely' to reoffend." (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1162; *Needham v. Superior Court* (2024) 16 Cal.5th 333, 352; Welf. & Inst. Code, § 6600, subd. (a)(3).) "The [SVPA] requires proof of a clear link between the second and third elements; that is, the finding of future dangerousness must be shown to derive from 'a currently diagnosed mental disorder characterized by the inability to control dangerous sexual behavior.' " (*Yates*, *supra*, 25 Cal.App.5th at p. 478.) However, evidence of sexually violent behavior occurring while the offender is in custody is not required. (§ 6600, subd. (d); *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1090.) And trial courts consider a person's prior convictions for sexually violent crimes " ' "solely for evidentiary purposes" to help establish . . . current mental disorder and the likelihood of future violent sex crimes.' " (*People v. Vasquez* (2001) 25 Cal.4th 1225, 1232.)

    *2. Standard of review*

    We review the sufficiency of the evidence supporting an SVPA commitment by applying the same substantial evidence test used in criminal appeals. (*People v. Orey* (2021) 63 Cal.App.5th 529, 560 (*Orey*); *People v. McCloud*, *supra*, 213 Cal.App.4th at p. 1088.) Under this familiar standard, we examine the record " ' "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a *reasonable trier of fact* could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Ghobrial* (2018) 5 Cal.5th 250, 277.) We resolve whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the

6

existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) "Reversal for insufficiency of the evidence is warranted only if it appears that ' "upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment]." ' " (*Orey*, at p. 561, quoting *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

**B.** *Substantial evidence supports the trial court's determination that appellant is an SVP*

At the conclusion of the trial, the court announced its decision sustaining the petition:  "Based upon the totality of the evidence presented, the court finds that the evidence establishes beyond a reasonable doubt that [appellant] is a sexually violent predator within the meaning of Welfare and Institutions Code section 6600, et seq."  Explaining its ruling, the trial court stated it had found the testimony of the People's experts, particularly that of Dr. Flinton, "to be persuasive and credible."

The trial court found that the People had carried their burden of proving each of the required elements for an SVP commitment beyond a reasonable doubt:  "[1.] [Appellant] has been convicted of committing sexually violent offenses against one or more victims.  [¶]  [2.] [Appellant] has a diagnosed mental disorder.  [3.] As a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior, and it is necessary to keep him in custody in a secured facility to ensure the health and safety of others."

Specifically, the court found that appellant had suffered two qualifying convictions, noting there was no dispute as to that

7

element.[2]  The court went on to find beyond a reasonable doubt that appellant has a diagnosed mental disorder, observing that all three experts, including appellant's, diagnosed appellant with a current mental disorder.  The court further found that "as a result of that diagnosed mental disorder, [appellant] is a danger to the health and safety of others because it is . . . likely that he will engage in sexually violent predatory criminal behavior."  Substantial evidence supports the trial court's findings.

In 2022, Dr. Flinton diagnosed appellant as currently suffering from other specified paraphilic disorder–coercion, with features of sadism, non-consent and force.  He based his diagnosis on the high level of coercion in all three of appellant's sexual offenses[3] and the fact that appellant continued to commit sexual offenses after being caught and suffering adverse consequences.  Dr. Flinton also diagnosed appellant with antisocial personality disorder, based on his long history of antisocial and criminal behavior, which started before age 15 and continued well past the age of 18.

During his only interview with Dr. Flinton, appellant refused to discuss any of his offenses at length, he had no interest in examining his criminal sexual behavior, and he had no insights into his crimes.  Appellant told Dr. Flinton he had never

---

[2] Appellant does not challenge the qualifying convictions finding on appeal.  Rather, his sole argument is that substantial evidence does not support "the existence of a diagnosed mental disorder."

[3] In addition to the qualifying offenses in 1982 and 1988, appellant was adjudicated as a minor for violation of section 288a, "Sex Perversion," in 1979, and was committed to the California Youth Authority.

8

participated in any treatment because he "never agree[d] with [the] program." He also denied that he had ever needed treatment or that he ever had a mental disorder that predisposed him to commit his offenses. Because appellant had not been in an environment where he could act out since 1988 and had refused to participate in any treatment or discuss his offenses, Dr. Flinton relied on historical information to make his diagnosis.

Dr. Flinton gave appellant a score of seven on the Static 99R recidivism risk assessment.[4] A score of seven represents a risk of recidivism that is well above average. Although appellant's score would drop to five when he turned 60 in two years, a score of five still reflects an above average risk of reoffending. Dr. Flinton stated that appellant's current Static 99R score indicates a recidivism risk of 27 percent over five years, which puts appellant at a higher risk than most sex offenders. And based on appellant's history of predatory offenses, Dr. Flinton believed that any future offense appellant committed would be predatory.

Dr. Flinton also explained that appellant's refusal to participate in therapy or examine his offenses raised concerns about whether he would reoffend. According to some studies, appellant's risk of reoffending would be cut in half if he participated in and completed sex offender treatment, but he has not done that. Based on appellant's history and elevated risk of recidivism, Dr. Flinton opined that appellant "continues to need

---

[4] Dr. Flinton explained that the Static 99R is an actuarial tool that scores an individual on 10 factors to predict the risk that the individual will commit another sexual offense within five years of release into the community.

custody and treatment." Dr. Flinton concluded that appellant meets the criteria for a sexually violent predator and is likely to engage in sexually violent predatory criminal behavior if he is released.

Dr. Coble-Temple diagnosed appellant with sexual sadism and antisocial personality disorder. She explained that "[s]exual sadism involves the sexual arousal or interest from [the] psychological or physical suffering of victims." In appellant's case, he engaged in multiple offenses beginning as a juvenile in which he inflicted psychological torture by "causing his victims severe psychological humiliation, forcing them into acts while brandishing weapons and engaging in sodomy at knifepoint." Appellant's criminal sexual acts involved "an escalation and repetitive degree of violence, threats of violence, [and] increased psychological torture," which culminated in the "actual sexual offense." Dr. Coble-Temple thus found appellant fully met the criteria for the sexual sadism diagnosis.

Dr. Coble-Temple also diagnosed appellant with antisocial personality disorder based on his long history—starting before age 15—of rule-breaking, impulsivity, and criminal behavior, including sexual deviance. Appellant continued these behaviors as an adult, violating the rights of others, demonstrating a lack of remorse, and failing to take responsibility for the effect of his actions on others. And he continued to engage in illegal conduct despite being caught and prosecuted.

According to Dr. Coble-Temple, the research shows sexual sadism disorder does not just disappear over time. She therefore opined that appellant currently suffers from sexual sadism disorder, despite the fact that his most recent offense occurred in 1988. Moreover, appellant had admitted having specific fantasies

while incarcerated, but has engaged in no treatment to manage his symptoms, further supporting a current diagnosis of sexual sadism. Dr. Coble-Temple explained that appellant's diagnosed antisocial personality disorder has not abated with age because it continues to "impact[ ] and imped[e] his behavioral choices, especially connected to his sexual deviance."

Like Dr. Flinton, Dr. Coble-Temple scored appellant with a seven on the Static 99R assessment. She also gave him a score of 14 on the Stable-2007, which assesses a sexual offender's dynamic risk factors for reoffending. Appellant's score placed him at the high level of risk. Based on his history of reoffending within two months of his release from the 1982 offense, and then again in 1988, Dr. Coble-Temple opined that appellant is emotionally and volitionally impaired. In addition, Dr. Coble-Temple believed any future sex offenses appellant committed would be predatory because his past offenses were committed against victims he had sought out, and he started relationships with his victims for the purpose of engaging in sexually deviant acts. She described appellant as "an individual who, when he has had access to victims, he has engaged in deviance." Dr. Coble-Temple concluded that appellant needs to remain in custody in a secured facility to ensure the health and safety of others due to "his diagnos[e]s of sexual sadism and [antisocial personality disorder] combined with his static and dynamic risk factors."

The trial court noted that appellant's expert, Dr. Fisher, had diagnosed appellant with a pedophilic disorder but testified he did not satisfy the second SVP criterion, because there was no

11

recent evidence of volitional impairment.[5] The court stated it was not persuaded by Dr. Fisher's testimony, explaining that Dr. Flinton had considered but rejected the pedophilic disorder diagnosis because appellant's qualifying offenses did not involve prepubescent children. The court added that "Dr. Fisher minimize[d] the results of the Static-99R, did not review all available Coalinga records, and in some instances relied on outdated research," while "[i]n making their diagnoses, Dr. Flinton and Dr. Coble-Temple considered many things, including [appellant's] past behavior, hospital records, Static-99R, Stable-2007, past evaluator reports and interviews of and statements by [appellant]."

"The testimony of one witness, if believed, may be sufficient to prove any fact." (*People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1508; Evid. Code, § 411.) Moreover, a conflict in the experts' opinions does not render the evidence insufficient. (*People v. Flores* (2006) 144 Cal.App.4th 625, 632.) As the finder of fact, the trial court was thus entitled to rely on the testimony of the People's experts while rejecting appellant's expert's conclusions. (*People v. Poe* (1999) 74 Cal.App.4th 826, 831 [trial court properly resolved conflict in expert testimony by crediting the testimony of the People's experts, whose "testimony [constituted] substantial evidence supporting the conclusion that appellant was likely to engage in sexually violent behavior"]; *People v. Mercer* (1999) 70 Cal.App.4th 463, 466 [the credibility of

---

[5] Dr. Fisher described the second criterion for an SVP finding as a "diagnosed mental disorder that currently predisposes an individual to acting out sexually and is characterized by emotional or volitional impairment."

the experts and their conclusions are matters to be resolved by the fact finder].) We will neither reassess the credibility of the experts nor reweigh the force of their conclusions. (*People v. Poulsom* (2013) 213 Cal.App.4th 501, 518 [the appellate court is not free to reweigh or reinterpret the credibility of the experts, and their conclusions are matters to be resolved by the jury].)

Appellant counters that where, as here, the government's experts' opinions are based solely on historical information, past behavior, and remote diagnoses, they cannot supply substantial evidence to support an SVP commitment. He concedes that the current weight of authority under the SVPA allows an SVP commitment based on historical information without proof of any recent overt act(s) or current or even somewhat recent symptoms of a qualifying mental disorder. (See *Orey, supra,* 63 Cal.App.5th at p. 563 [the assessment of whether a defendant is likely to reoffend " 'must include consideration of his past behavior, his attitude toward treatment and other risk factors applicable to the facts of his case' "]; *People v. Sumahit* (2005) 128 Cal.App.4th 347, 353 (*Sumahit*) ["The fact that defendant has not misbehaved in a strictly controlled hospital environment does not prove he no longer suffers from a mental disorder that poses a danger to others"].) But appellant contends that these cases impermissibly shift the burden of proof to the SVP defendant to prove he or she is not an SVP. Appellant further asserts that because the experts' conclusions that appellant still suffers from a diagnosed mental disorder were not based on any current indicia of sexual deviance, violence or predatory behavior, but were founded on guess, surmise and conjecture, those opinions do not constitute substantial evidence.

The trial court rejected these arguments below as we do on appeal. Specifically, the fact that appellant has not engaged in any sexual misconduct or violent behavior while in a strictly controlled hospital setting does not establish he no longer suffers from a mental disorder that presents a danger to others outside the institutional environment. (*Orey, supra,* 63 Cal.App.5th at p. 563 [because defendant lacks access to female children, who were his victims in the past, "his lack of outward signs of sexual deviance is not dispositive of whether he is likely to reoffend if released into society at large"]; *Sumahit, supra,* 128 Cal.App.4th at p. 353 ["defendant errs in supposing that he must presently engage in overt manifestations of a sexually violent predator in order to support an opinion that he still suffers from a mental disorder affecting his ability to control his impulses. The fact that defendant has not misbehaved in a strictly controlled hospital environment does not prove he no longer suffers from a mental disorder that poses a danger to others"].)

That the People's experts were forced to rely more heavily on historical information in diagnosing appellant does not show their opinions were based on guess, surmise and conjecture. Rather, the experts' reliance on historical evidence and tests was due entirely to appellant's refusal to discuss his criminal offenses with the experts or to engage in any treatment that might have given him insight into what drove him to commit those offenses. Under these circumstances, appellant may not challenge the sufficiency of the evidence supporting the trial court's ruling or the experts' opinions. " 'The law has a strong interest in seeing to it that litigants do not manipulate the system, especially where to hold otherwise would permit them to " 'trifle with the courts.' " [Citation.] Here, defendant fully cooperated with his own

14

psychologist, while denying the People's doctors the opportunity to interview him . . . . A sex offender cannot deny the state access to the workings of his mind and then claim a lack of proof that he has a "current" psychological disorder. Because he refused to be interviewed by the state's experts, who could have formed an opinion as to his present dangerousness, defendant has forfeited the claim that the state did not prove that he was currently dangerous.' " (*Orey, supra,* 63 Cal.App.5th at p. 563, quoting *Sumahit, supra,* 128 Cal.App.4th at pp. 353–354; see also *In re Mims* (2012) 203 Cal.App.4th 478, 489 [in the SVP context, "a defendant who refuses to be interviewed by the state's experts cannot challenge a finding that he or she currently has a psychological disorder"].)

The trial court placed particular emphasis on the fact that appellant has consistently refused to participate in any form of treatment. "[Appellant] has never expressed an interest in doing the program. He's never tried to do the program. [¶] He has affirmatively stated that he will not do the program. This is not a situation where [appellant] was trying to do the program but could not progress in the program or complete it due [to] any deficiencies in the program." Appellant's refusal to accept treatment not only made it difficult to assess his sexual interests and patterns and forced the People's experts to rely more heavily on historical information. It also supports the trial court's findings that appellant had gained no insight into why he committed his crimes in the first place and that he "would not be able to control his dangerous behavior by voluntary means if released into the community." (*Orey, supra,* 63 Cal.App.5th at p. 563.)

15

As the court in *Sumahit* explained: "The availability of treatment is at the heart of the SVPA. [Citation.] 'Through passage of the SVPA, California is one of several states to hospitalize or otherwise attempt to treat troubled sexual predators.' [Citation.] Accordingly, one of the key factors which must be weighed by the evaluators in determining whether a sexual offender should be kept in medical confinement is 'the person's progress, if any, in any mandatory SVPA treatment program he or she has already undergone; [and] *the person's expressed intent, if any, to seek out and submit to any necessary treatment . . . .*' [Citation.] A patient's refusal to cooperate in any phase of treatment may therefore support a finding that he 'is not prepared to control his untreated dangerousness by voluntary means if released unconditionally to the community.' " (*Sumahit, supra*, 128 Cal.App.4th at pp. 354–355.)

We conclude that substantial evidence supports the trial court's finding in this case that appellant meets the criteria for commitment as a sexually violent predator under Welfare and Institutions Code section 6600 et seq.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

17