Filed 11/16/22  P. v. Arnold CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEPHEN ARNOLD,<br><br>    Defendant and Appellant. | B311683<br><br>(Los Angeles County<br>Super. Ct. No. ZM011449) |

APPEAL from an order of the Superior Court of Los Angeles County, Andrea C. Thompson, Judge.  Affirmed.

Lori E. Kantor for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Stephen Arnold appeals an order of commitment the trial court entered pursuant to the Sexually Violent Predator Act, Welfare and Institutions Code section 6600 et seq. (SVPA or Act).[1] He contends there is insufficient evidence to support the order. He also argues the trial court erroneously permitted an expert psychologist to testify for the People. We reject both arguments and affirm the order.

## BACKGROUND

Arnold was a troubled juvenile. He began drinking alcohol and smoking marijuana in his early teens. He dropped out of school in tenth grade. According to his mother, Arnold was a "very disturbed child" who went "crazy" when he became intoxicated. He was arrested on two occasions as a minor for petit larceny.

In his early twenties, Arnold began regularly using crack cocaine and PCP. From 1980, when he was 20, to 1991 when he was 31, Arnold was repeatedly arrested for many different crimes, including larceny, theft, fraud, robbery, possession of stolen property, possession of narcotics, assault, and criminal possession of a firearm or knife. On at least nine occasions, he was convicted and sentenced.

A. *Arnold's arrests and convictions for sexually violent crimes*

On four occasions Arnold was arrested for committing sexually violent crimes. In June 1984, Arnold was arrested for

---

[1] Unless otherwise stated, all further statutory references are to the Welfare and Institutions Code.

2

rape in concert with force or violence. The victim, however, declined to assist the prosecution, and the case was not pursued.

In August 1984, Arnold was arrested and charged with forcible rape and sodomy. He pled guilty to "sexual misconduct," a misdemeanor under New York law.

On July 5, 1991, Arnold was arrested for sexually assaulting Cynthia S. He allegedly forced Cynthia S. to orally copulate him at knife point. Arnold also allegedly raped Cynthia S. twice. He was booked and released the same day. Later, when Cynthia S. did not appear at trial, the prosecution dropped the charges against Arnold.

On July 12, 1991, while the Cynthia S. case was pending, Arnold committed the crimes that led to his long-term incarceration. Armed with a pellet rifle, Arnold forced his way into a residence, subdued two men, and demanded money from Diane L. and the men.

During this incident, Arnold ordered Diane L. to orally copulate him. She complied after Arnold threatened to shoot her and the men if she did not do as he demanded. Arnold then ordered Diane L. to take off her pants and underwear and have intercourse with him. While Arnold was raping Diane L., the police arrived. Arnold fled but was apprehended that day.

In March 1992, Arnold was convicted of forced rape, forced oral copulation, and first-degree robbery. He was sentenced to twenty-six years in prison.

B.    *Arnold's behavior in prison*

While Arnold was in prison, correctional officers wrote two-dozen reports charging him with violation of prison rules. Many of Arnold's violations related to possession of alcohol. In 1998, he was accused of trying to physically force another inmate to

3

perform a sexual act. There is no record, however, of whether any charges were brought related to this offense. In 2002, Arnold was found to have committed a serious rule violation for indecent exposure. Arnold lifted his penis over his underwear and stated to a correctional officer, "This is what you want."

C.  *The commencement of this action and Arnold's confinement at a state hospital*

Shortly before Arnold finished serving his sentence, the People commenced this action. On March 22, 2007, the People filed a petition for commitment pursuant to the SVPA. At the probable cause hearing on April 24, 2007, the court denied Arnold's motion to dismiss, and ordered that he be confined in a secured facility pending trial. Arnold was then transferred to the Coalinga State Hospital (the hospital).

D.  *Arnold's conduct at the hospital*

For a variety of reasons not relevant here, the case was not brought to trial until January 2020. While Arnold was in the hospital waiting for trial, the authorities wrote 176 infraction reports for a wide range of offenses, including possession of alcohol, possession of pornography, and aggressive and threatening conduct.

Arnold was frequently intoxicated at the hospital. On one occasion, when his psychiatrist told him he appeared intoxicated, Arnold responded, "I don't fucking care what you think."

Arnold also showed no remorse for his sexually violent crimes. He denied committing any sexual offenses, claiming he was simply in the "wrong place at the wrong time."

Arnold was frequently verbally abusive to hospital staff, especially when he was intoxicated. He often called women at

4

the hospital sexualized names. On one occasion, referring to a staff member, Arnold stated, "If that bitch says one more word, I'm going to rape her."

In September 2017, while psychiatric technician Froila Fernandez was treating another patient, Arnold walked by and dropped a letter on her lap. In the letter, Arnold solicited Fernandez to buy a throw-away phone so they could speak freely. He also praised her physical attributes and stated she had a "well shape[d] butt."

E.    *The trial*

Both parties waived their right to a jury trial. The bench trial lasted from January to December, 2020, taking nearly a year to complete due to delays associated with the COVID-19 pandemic.

Both parties called two psychologists as expert witnesses: the People called Dr. Harry Goldberg and Dr. Laljit Sidhu; Arnold called Dr. Amy Phenix and Dr. Brian Abbott. Doctors Goldberg, Sidhu, and Phenix diagnosed Arnold with anti-social personality disorder (ASPD) and alcohol abuse disorder. Dr. Abbott did not diagnose Arnold with ASPD because he could not substantiate one criterion, namely conduct disorder before age 15. Dr. Abbott agreed with the other expert psychologists that Arnold had alcohol abuse disorder.

Dr. Goldberg opined that Arnold was a sexually violent predator (SVP) within the meaning of the statute. Doctors Sidhu, Phenix, and Abbott opined that Arnold did not meet the criteria for an SVP. Because we must review the evidence in a light most favorable to the People, we shall discuss Dr. Goldberg's testimony in detail below.

F.    *The order of commitment*

On March 8, 2021, the trial court issued a proposed statement of decision in which it found the People's petition true and that Arnold was an SVP.[2]  The court also entered an order of commitment.  The court ordered Arnold committed to the custody of the California Department of State Hospitals (DSH) for appropriate treatment and confinement for an indeterminate time.

On March 22, 2021, Arnold filed a notice of appeal from the March 8, 2021, "judgment."[3]

## DISCUSSION

I.    ***There is Substantial Evidence Supporting the Commitment Order***

Under the SVPA, a sexually violent predator is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  (§ 6600, subd. (a)(1).)

---

[2]    The proposed statement of decision stated that if the parties did not file objections within 15 days, "this Statement of Decision shall become the final judgment."  There is nothing in the record indicating whether any objections to the proposed statement of decision were filed.

[3]    The order of commitment was a final determination of Arnold's rights under the SVPA, equivalent to a final judgment (*People v. Whaley* (2008) 160 Cal.App.4th 779, 782), from which an appeal may be taken.  (Code Civ. Proc., § 904.1, subd. (a)(1).)

6

The People must prove three elements beyond a reason a reasonable doubt to prevail:  "(1) the person has suffered a conviction of at least one qualifying 'sexually violent offense,' (2) the person has 'a diagnosed mental disorder that makes the person a danger to the health and safety of others,' and (3) the mental disorder makes it likely the person will engage in future predatory acts of sexually violent criminal behavior if released from custody."  (*People v. Yates* (2018) 25 Cal.App.5th 474, 477.)

The term "diagnosed mental disorder" includes "a congenital or acquired condition affecting the emotional or *volitional capacity* that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others."  (§ 6600, subd. (c), italics added.)

Arnold does not dispute there is substantial evidence showing he committed qualifying sexually violent offenses.  He also does not dispute there is substantial evidence supporting the trial court's finding he has ASPD.

Arnold instead contends there is no substantial evidence supporting a finding that he has a "diagnosed mental disorder" within the meaning of the Act.  He argues there is insufficient evidence showing a causal nexus between his ASPD and his predisposition to commit sexual crimes.  In other words, Arnold argues there is insufficient evidence that his "ASPD predisposed him to the commission of criminal sexual acts."

A.    *Standard of review*

We review the sufficiency of the evidence in SVPA cases under the same substantial evidence test used in criminal appeals.  (*People v. Orey* (2021) 63 Cal.App.5th 529, 560 (*Orey*).)  "In assessing the sufficiency of the evidence, we review the entire

7

record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant [is a sexually violent predator] beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Reversal for insufficiency of the evidence is warranted only if it appears that ' "upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment]." ' " (*Orey, supra,* 63 Cal.App.5th at p. 561.)

We cannot reweigh the facts or the credibility of the witnesses. (*People v. Snow* (2003) 30 Cal.4th 43, 67.) "The testimony of just one witness is enough to support the judgment "so long as that testimony is not inherently incredible." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830; accord *People v. Bowers* (2006) 145 Cal.App.4th 870, 879 ["A single psychiatric opinion that an individual is dangerous because of a mental disorder constitutes substantial evidence"].)

In an SVP trial, the People must present expert testimony by a psychologist or psychiatrist to establish the elements for commitment. (See *People v. Yates, supra,* 25 Cal.App.5th at p. 478; *People v. Ward* (1999) 71 Cal.App.4th 368, 374 (*Ward*); Evid. Code, §§ 800, 801.) "Although an expert's opinion on an ultimate issue of fact is admissible, and may constitute substantial evidence [citation], the conclusion by *itself* does not constitute substantial evidence without an adequate factual foundation." (*People v. $47,050* (1993) 17 Cal.App.4th 1319, 1325.)

B.     *Dr. Goldberg's testimony is sufficient to uphold the commitment order*

Dr. Goldberg found that Arnold met all the criteria for ASPD: (1) conduct disorder before age 15, (2) violation of social

norms, (3) aggressiveness, (4) impulsivity, (5) manipulation of others and deceitfulness, and (6) lack of remorse.

To determine whether Arnold's was likely to commit sexually violent crimes if released, Dr. Goldberg pursued a "structured actuarial approach." He applied two actuarial instruments: the Static-99 and Static-2002R. Under the Static-99, Dr. Goldberg placed Arnold in a group with a 5-year recidivism rate of 30.7 percent, and a 10-year recidivism rate of 42.8 percent. Arnold's "relative risk" under this assessment is 97.2 percent, which means that he has a higher risk of recidivism than 97.2 percent of sex offenders. Under the Static-2002R, Dr. Goldberg placed Arnold in a group with a 19.2 percent recidivism rate in 5 years.

Dr. Goldberg also concluded idiosyncratic factors indicated that Arnold was more likely to commit sexually violent crimes than other individuals with similar scores on the Static-99 and Static-2002R. Unlike most men of his age, Arnold's aggression, impulsivity, and sexual desire were not diminishing. Arnold's behavior at the hospital generated an extraordinary 176 reports of misconduct, demonstrating unabated aggression and a lack of impulse control. Further, Arnold stated that his sex drive had gone up, and he reported he continued to masturbate 2 times a week.

Dr. Goldberg testified, "I think this combination of his sexual preoccupation, impulsivity, aggressivity and history of sexual aggression is a really bad combination for him." He also stated that Arnold was a psychopath with no empathy for others, further increasing the risk he would reoffend. Dr. Goldberg concluded: "I just can't see this man controlling himself once he is released."

Dr. Goldberg explained that there is a nexus between Arnold's ASPD and his predisposition to commit sexually violent crimes in a predatory manner. According to Dr. Goldberg, ASPD includes "characteristics, such as aggressiveness, lack of remorse, impulsivity . . . that were associated with the . . . convicted charge."

Dr. Goldberg noted that Arnold has been arrested four times for sexually violent crimes, two of which resulted in convictions.[4] According to Dr. Goldberg, this set Arnold apart from most sex offenders, about 70 percent of whom are "one-time offenders." Only seven percent of rapists and eight percent of child molesters have three or more arrests for sexual offenses. Dr. Goldberg opined that Arnold's multiple arrests and convictions indicate "he has difficulty controlling his urges toward sex, whether . . . the alleged victim is agreeing to it or not."

Dr. Goldberg found particularly troublesome the proximity of the events involving Cynthia S. and Diane L. in July of 1991. Arnold's arrest for raping Cynthia S. on July 5 did not deter him from raping Diane L. just a week later on July 12. In Dr. Goldberg's view, this indicates "problems in the volitional capacity, which is one of the definitions of a mental disorder under the sexually violent predator statute."

Dr. Goldberg's testimony is substantial evidence that Arnold is a sexually violent predator within the meaning of the Act. Moreover, Dr. Goldberg provided a sufficient foundation for

---

[4]  The Static-99 and Static-2002R consider arrests for sexual offenses, as well as convictions, as part of the "actuarial process."

his opinions. Although a reasonable trier of fact could have found the testimony of the other expert psychologists more convincing, we do not reweigh the evidence. Dr. Goldberg's testimony, by itself, is sufficient to support the trial court's findings and order of commitment.

## II. *Under the Law of the Case, Arnold is Barred from Asserting His Argument Regarding the Testimony of an Independent Evaluator*

The SVPA provides that before a person is committed, the person "shall be evaluated by two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist." (§ 6601, subd. (d).) "If one or more of the original evaluators is no longer available to testify for the [People] in court proceedings," the People's attorney may request the DSH to perform replacement evaluations. (§ 6603, subd. (d)(1).) The People's attorney may also request "updated evaluations" if necessary. (*Ibid.*)

In 2013, Dr. George Joseph Grosso and Dr. Laljit Sidhu were appointed as replacement evaluators for Arnold. They both determined that he did not meet the requirements for commitment under the Act.

The People then filed a motion pursuant to Code of Civil Procedure section 2032.020 (section 2032.020) to permit a third psychologist, Dr. Richard Ramanoff, to conduct an examination. The trial court granted the motion.

Arnold challenged this order by filing a petition for writ of mandate. In an unpublished opinion, this division affirmed the order, stating: "Consistent with *People v. Landau* (2013) 214 Cal.App.4th 1, 24–27 (*Landau*), we hold the respondent court had discretion to order a mental evaluation of an alleged sexually

11

violent predator by Dr. Romanoff." (*Arnold v. Superior Court* (Nov. 14, 2014), B254887 [nonpub. opn.] (*Arnold I*).)

Dr. Romanoff never evaluated Arnold. While the case was delayed, he stopped working for the DSH.

In 2019, the People filed a motion for an updated evaluation by Dr. Sidhu, but not from Dr. Grosso, who was no longer under contract with the DSH. That motion was granted.

The People subsequently retained Dr. Goldberg. Although the record is unclear on this point, the parties agree that Dr. Goldberg was not one of the original or replacement evaluators; he was instead retained as an independent expert pursuant to section 2032.020. At trial, the court denied Arnold's motion to exclude Dr. Goldberg's testimony.

Arnold contends that the SVPA does not permit the People to retain an expert "to prepare an independent evaluation of an alleged SVP and testify to their opinion." He further contends that *Landau* and *Arnold I* were "incorrect" in holding to the contrary. This argument is barred by the law of the case.

"Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94 (*Jurado*).) Generally, the doctrine applies to the Court of Appeal's denial of a petition for writ of mandate when the matter is fully briefed, there is an opportunity for oral argument, and the cause is decided by a written opinion. (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 894.)

Arnold does not dispute these requirements are satisfied. *Arnold I* was decided on the merits after the matter was fully

briefed and the parties had an opportunity for oral argument.  In a substantive written opinion, we rejected the same legal argument that Arnold makes in this appeal regarding the retention of an independent expert.

Arnold argues that we should nonetheless revisit the issue in the interests of justice.  The law of the case doctrine does not apply "when the rule stated in the prior decision was a ' "manifest misapplication" of the law resulting in "substantial injustice." ' " (*Jurado*, *supra*, 38 Cal.4th at p. 95.)  We reject this argument.  Although good faith arguments can be made that *Landau* and *Arnold I* were decided incorrectly, there was no manifest misapplication of the law.

Arnold also argues that this court should reconsider the issue based on new facts.  He contends "[t]he facts not previously considered by the court . . . consist of the legislative history of section 6603, subdivision (d)(1)."  It is true we may reconsider a legal issue when presented with new facts that could change the result.  (*Krumdick v. White* (1895) 107 Cal. 37, 40; accord *In re Estate of Baird* (1924) 193 Cal. 225, 234–236 [prior appellate decision on sufficiency of the evidence is not law of the case when evidence on retrial materially changed].)  But the legislative history of the Act does not amount to "new facts" in this case.

13

## DISPOSITION

The March 8, 2021, order of commitment is affirmed.

NOT TO BE PUBLISHED


                                    TAMZARIAN, J.*


We concur:


        BAKER, Acting P. J.


        KIM, J.


---

*       Judge of the Los Angeles County Superior Court, assigned
by the Chief Justice pursuant to article VI, section 6, of the
California Constitution.