Filed 5/14/24  P. v. Gonzales CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAIME ALFREDO GONZALES,<br><br>    Defendant and Appellant. | 2d Crim. No. B325920<br>(Super. Ct. No. 2019020858)<br>(Ventura County) |

Jaime Alfredo Gonzales appeals his conviction, by jury, of furnishing a controlled substance (Health & Saf. Code, § 11352, subd. (a)), bringing drugs into a jail (Pen. Code, § 4573)[1], and possession of an illegal substance in a jail.  (§ 4573.6, subd. (a).)  Appellant admitted having suffered two prior strike convictions.  The trial court sentenced him to 10 years in state prison.  He contends he received ineffective assistance of counsel

---

[1] All statutory references are to the Penal Code unless otherwise stated.

at trial because counsel did not seek exclusion of statements he made in a recorded interview with sheriff's deputies and because counsel negligently stipulated to a prejudicial fact and then failed to seek any remedy for that error.  Second, appellant contends the trial court erred when it denied his *Romero*[2] motion and declined to consider mitigating factors listed in the recent amendment to section 1385, subdivision (c).  We affirm.

*Facts*

Appellant was taken into custody due to a probation violation and placed in a holding cell at the Pre-Trial Detention Facility in Ventura County.  Ronald Bustamonte was among several other men held in the same cell.  The cell has a toilet shielded by a short privacy wall.  It is also equipped with a camera that records audio and video.

Appellant and Bustamonte greeted each other in the cell and, after conversing, realized they shared an acquaintance.  Appellant spent a significant time on the toilet while Bustamonte was nearby.  Although his movements were partially shielded by the wall, the video shows appellant moving in a way that is consistent with removing an object from his buttocks.  At one point, Bustamonte can be seen snorting something and manipulating his nose.  He began to show signs of distress almost immediately.  Within moments, Bustamonte said, "Help me," and fell to the floor.

Meanwhile, appellant can be heard asking whether any cameras are monitoring the cell.  When another inmate first suggests calling for help, appellant dismisses his concern saying, "We're good. . . .  He'll be all right."  But after a short time,

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

appellant agreed they should call for help and joined the others in calling for the guards.

When deputies arrived in the cell, Bustamonte was non-responsive and not breathing. Deputies administered CPR until he could be transported to the hospital. Bustamonte recovered after receiving several doses of Narcan and other medical care. His blood tested positive for heroin and fentanyl.

The other inmates who had been in the holding cell, including appellant, were moved to another cell and strip-searched. No contraband was found. Appellant was also examined in a body-scanner which spotted an abnormality consistent with a bindle of drugs in his body. He was sent to the hospital for observation. Detectives searching the holding cell found a spork in the toilet that had brown residue on it which was later determined to include fentanyl and heroin. The spork was not tested for fingerprints or DNA.

Another inmate from the holding cell told detectives that he saw appellant pull an item from his buttocks. He also saw appellant give some of the substance to Bustamonte, who snorted it off a spoon. Video from the cell camera confirmed that the inmate appeared to be watching while appellant was behind the privacy wall. At trial, the inmate claimed to have forgotten these incidents.

Appellant was interviewed by sheriff's deputies after he returned to the jail from the hospital. Initially, appellant waived his *Miranda* rights and agreed to answer the deputies' questions. Appellant admitted that he swallowed a bindle of heroin while he was at the probation department, after his probation officer said that he was going to be taken into custody for a violation. He did not tell anyone at the jail that he had

swallowed the drugs. Appellant did not have a plan for the drugs; he "figured it'd dissolve inside me." Appellant never felt their effects; he thought he probably "pooped it out" at the hospital. He described his interaction with Bustamonte but denied knowing anything about the overdose.

After the deputy asked appellant for more details about his conversation with Bustamonte, appellant said, "You know what, I want a lawyer. I don't wanna talk anymore. I'm done. I'm done. This is ridiculous. I'm done." The deputy replied, "Okay. You know, yeah, I'm, I'm not gonna ask you any more questions, obviously you want an attorney. But you know-" Appellant interrupted, "I can tell you one thing though. I can tell you where you could go get, uh, the big quantity of what I had." Appellant wondered if the police would raid the house and whether he could remain anonymous.

At this point, the deputy reminded appellant that he had asked for a lawyer. The deputy clarified, "I wanna talk to you about that. Okay. But by law, you said you want an attorney and I have to – I'm supposed to stop talking to you. But if – with your permission, I can continue talking to you about that if you, if you, if you give me that permission." Appellant responded, "Yeah." They had the following exchange:

> Deputy: "So, so, just wanna clarify, you're okay talking to me without an attorney right now?
> Appellant: About –
> Deputy: Yeah. About whatever you wanna talk about.
> Appellant: Yeah.
> Deputy: Okay. All right. Then, go ahead. Tell me what you need to tell me."

4

Appellant described where and how he bought drugs. After agreeing with the deputy that mixing heroin with fentanyl is "fucked up," appellant described an occasion when he watched another person overdose on heroin and fentanyl and helped to save that person's life.

The deputy returned to Bustamonte's overdose, asking appellant whether he could help the deputy find out what happened to him. Appellant responded, "I don't' know. Go – his brother is a dealer. Go ask his brother." Appellant consistently denied knowing where Bustamonte got the drugs. He also denied having any drugs on his person, or giving drugs to anyone. The deputy asked, "Did [Bustamonte] ask you to use it – the dope or did you offer it to him?" Appellant replied, "No. Neither one." After an exchange about whether the deputy should "throw the book" at appellant, the deputy asked whether appellant was sorry about what happened to Bustamonte. He responded, "What happened to him was fucked up." The deputy explained to appellant that he would be charged with additional crimes. Appellant did not respond, except to say he was tired and done talking.

At trial, the parties stipulated to six facts including, "Ronald Bustamonte was not under the influence of a narcotic at the time he was booked into custody." After the prosecution rested, defense counsel announced in the jury's presence that the defense would rest without calling a witness. Outside the presence of the jury, defense counsel informed the trial court that she had never seen the stipulation regarding Bustamonte before the trial court read it into the record. Counsel stated, "I don't think it's that important . . . but I just want the court to know that today is the first time I had ever seen or heard of it."

5

Counsel also agreed that she "should have objected" when the trial court read the stipulation into the record. She did not request any remedy from the trial court but explained, "I just wanted to make the record clear for purposes of appeal."

*Contentions*

Appellant contends he received ineffective assistance of counsel at trial because his counsel did not move to exclude the portion of his interview that occurred after he asked for a lawyer. He contends counsel was also ineffective for entering into the stipulation regarding Bustamonte and for not seeking a remedy after she discovered her error. Finally, appellant contends the trial court erred when it denied his *Romero* motion and failed to consider the mitigating factors listed in section 1385, subdivision (c).

*Discussion*

Ineffective Assistance of Counsel. To establish ineffective assistance of counsel, appellant must demonstrate both that the performance of his trial counsel was deficient under an objective standard of professional reasonableness and that appellant was prejudiced in that there is a reasonable probability he would have achieved a more favorable outcome but for counsel's errors. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694.) When the record on appeal does not explain why counsel chose to act as he or she did, "a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) We defer to the tactical decisions of trial counsel, unless appellant establishes that "'there was ""no conceivable tactical purpose"' for

6

counsel's act or omission.""'" (*People v. Yates* (2018) 25 Cal.App.5th 474, 488.)  The decision whether to object to inadmissible evidence is highly tactical and will seldom establish ineffective assistance of counsel.  (*People v. Catlin* (2001) 26 Cal.4th 81, 165; *People v. Maury* (2003) 30 Cal.4th 342, 419.)

Here, appellant received *Miranda* warnings at the beginning of the interview and voluntarily waived his rights to silence and counsel.  He later stated, "You know what, I want a lawyer.  I don't wanna talk anymore.  I'm done. I'm done.  This is ridiculous.  I'm done."  Almost immediately, however, appellant also said, "I can tell you one thing though.  I can tell you where you could go get, uh, the big quantity of what I had."  The deputy conducting the interview clarified that appellant had asked for a lawyer and that the deputy was "supposed to stop talking to you.  But if – with your permission, I can continue talking to you about that if you, if you, if you give me that permission."  Appellant agreed that he was "okay talking to [the deputy] without an attorney right now."

Trial counsel did not object to admission of the statement because, as she explained, "I can't object because he was Mirandized, and he continued to talk."  Counsel also made no attempt to exclude the portion of the interview that took place after appellant said he wanted a lawyer.  Appellant contends this failure amounts to ineffective assistance of counsel.

When a defendant invokes his or her right to counsel during a custodial interrogation, the interrogation must stop "'until counsel has been made available to him, unless [he] himself initiates further communication, exchanges, or conversations with police.'"  (*People v. Jackson* (2016) 1 Cal.5th 269, 339, quoting *Edwards v. Arizona* (1981) 451 U.S. 477, 484-

7

485.)  If a defendant invokes his or her right to remain silent, the interrogation must also cease.  (*People v. Gonzalez* (2005) 34 Cal.4th 1111, 1122.)

These rights may be invoked at any time during an interrogation.  "However, when, as in this case, a defendant has waived his *Miranda* rights and agreed to talk with police, any *subsequent* invocation of the right to counsel or the right to remain silent must be unequivocal and unambiguous."  (*People v. Sanchez* (2019) 7 Cal.5th 14, 49 (*Sanchez*).)  As our Supreme Court has explained, "'[A]fter a knowing and voluntary waiver, interrogation may proceed "until and unless the suspect *clearly* requests an attorney."  [Citation.]  Indeed, officers may, but are *not required* to, seek clarification of ambiguous responses before continuing substantive interrogation.  [Citation.]'  [Citation.]  The same rules apply to an invocation of the right to silence as apply to the invocation of the right to counsel.  [Citations.]"  (*Id.* at p. 49.)

A defendant may also invoke his or her rights to silence and counsel selectively, by placing a "'"partial restriction" on his [or her] willingness to speak to the officers."'  (*People v. Flores* (2020) 9 Cal.5th 371, 425 (*Flores*), quoting *People v. Johnson* (1993) 6 Cal.4th 1, 25.)  A selective invocation must be unambiguous when viewed in the context of the entire interaction between the defendant and law enforcement.  (*Flores,* at pp. 425-426.)

Here, appellant contends that he unambiguously invoked his right to counsel when he said, "You know what, I want a lawyer.  I don't wanna talk any more.  I'm done."  But appellant immediately followed these blunt statements by volunteering to tell the deputy "where you could go get, uh, the

8

big quantity of what I had." When the deputy attempted to clarify appellant's position, appellant agreed that he was "okay talking to [the deputy] without an attorney right now." Earlier in the interview, appellant complained that he was cold and tired, that no one had "been checking up on me when I'm in the cells," and that he had to wait a long time for the deputy and his partner to begin the interview. When the deputy asked for more detail about appellant's conversation with Bustamonte, appellant said he wanted a lawyer and that, "This is ridiculous."

Viewed in context, we conclude that appellant did not unequivocally and unambiguously invoke either his right to counsel or his right to silence. (*Sanchez, supra,* 7 Cal.5th at p. 49.) He expressed frustration about "ridiculous" questions and then volunteered equally incriminating information about the source of his drugs. "A defendant has not invoked his or her right to silence when the defendant's statements were merely expressions of passing frustration or animosity toward the officers, or amounted only to a refusal to discuss a particular subject covered by the questioning." (*People v. Rundle* (2008) 43 Cal.4th 76, 115, disapproved on another ground, *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) The deputy did not violate appellant's right to counsel when he asked appellant to clarify whether he was willing to continue talking without an attorney. (*Flores, supra*, 9 Cal.5th at pp. 425-426.)

Appellant waived his rights to silence and counsel. His subsequent statements were properly admitted into evidence. Consequently, defense counsel did not render ineffective assistance by failing to request their exclusion. (See, e.g., *People v. McCurdy* (2014) 59 Cal.4th 1063, 1091; *People v. Moore* (2011) 51 Cal.4th 386, 404.)

9

Appellant next contends counsel was ineffective because she stipulated that the victim "was not under the influence of a narcotic at the time he was booked into custody." After the trial court read this stipulation to the jury, and after both sides had rested, defense counsel informed the trial court that she was surprised by this stipulation and had never seen it before. Counsel did not request any remedy.

Whether inadvertent or strategic, the stipulation did not prejudice appellant because the evidence supporting it was overwhelming. The victim, Bustamonte, had been in custody at Atascadero before he was transported Ventura County. He was inspected for intoxication during processing into the County Pre-Trial Detention Facility. His overdose occurred while in the holding cell, after his extended interaction with appellant, who can be seen on the surveillance video sitting on the toilet and moving in a way that is consistent with removing an object from his buttocks. Bustamonte overdosed on heroin and fentanyl, the same drugs found on the spork that was recovered from the holding cell.

The evidence was overwhelming that Bustamonte overdosed on drugs he obtained from appellant while they were housed in the holding cell. There is no reasonable probability jurors would have come to a different conclusion without the stipulation.

Appellant contends the cumulative effect of these deficiencies amounted to ineffective assistance of counsel. We disagree. There is no error or prejudice to accumulate because neither instance of purportedly deficient representation resulted in prejudice to appellant. (See, e.g., *People v. Hardy* (2018) 5 Cal.5th 56, 106.)

Section 1385. In addition to the instant matter, appellant pleaded guilty in a separate case to second degree burglary. (§ 459.) He was sentenced in both matters at the same hearing. In this matter, appellant admitted that he had two prior "strike" convictions: a 1996 conviction of assault with a deadly weapon (§ 245, subd. (a)(1)) and a 1997 conviction of assault with a deadly weapon while confined in state prison. (§ 4501.) Appellant made a *Romero* motion to strike one of his prior "strikes." He noted that his prior convictions were old, that he was receiving consecutive terms in the current matters, and that the crimes he committed after his strike had not escalated in seriousness, were non-violent, and were related to his addiction.

The trial court denied the *Romero* motion. It concluded some of the crimes appellant committed after his strike were violent in nature. It also noted that, in the present offense, appellant tried to protect himself by stalling or preventing the other inmates from calling for help when Bustamonte first showed signs of distress. The trial court sentenced appellant to eight years on count 1, furnishing a controlled substance, and a consecutive term of two years on count 2, bringing drugs into a jail.

Appellant contends the trial court erred when it denied his *Romero* motion because it did not give great weight to the mitigating circumstances listed in section 1385. He contends that the recent amendment to section 1385 requires the trial court to give great weight to the enumerated mitigating circumstances when deciding whether to dismiss a prior strike. We conclude the trial court was not required to do so and did not abuse its discretion when it denied the *Romero* motion.

Amendments to section 1385 which took effect on January 1, 2022, provide guidance regarding the exercise of the trial court's discretion to dismiss sentence enhancements in the furtherance of justice. (*People v. Burke* (2023) 89 Cal.App.5th 237, 242-243 (*Burke*).) Subdivision (c) of section 1385 now provides, "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Ibid*.) The mitigating circumstances include, "The enhancement is based on a prior conviction that is over five years old." (*Id*., subd. (c)(2)(H).)

Subdivision (c) of section 1385 expressly applies to the dismissal of "an enhancement" in the furtherance of justice. The "Three Strikes" law is not an enhancement, it is an alternate sentencing scheme. (*Romero, supra,* 13 Cal.4th 527; *People v. Williams* (2014) 227 Cal.App.4th 733, 744.) Subdivision (c) of section 1385 does not apply to the dismissal of appellant's strike.

As the court explained in *Burke, supra,* 89 Cal.App.5th 237, "We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law. [Citation.] The Legislature did not otherwise define the word

12

'enhancement' in section 1385. Because the statutory language is clear and unambiguous, we follow its plain meaning . . . . The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement. We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Id.* at pp. 243–244.) The same analysis applies to both second and third strike offenders. (See, *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2.)

Appellant urges us to disagree with *Burke* and conclude that the Legislature intended the amended section 1385 to apply to sentencing under the Three Strikes law. We decline. The Legislature amended section 1385 against the backdrop of settled precedent defining the terms "enhancement" and "strike." Yet it expressly limited its amendment of subdivision (c) to enhancements, without including any reference to strikes. We presume the Legislature was aware of the legal context in which it was operating and that it "acquiesced in the previous judicial construction" of those terms. (*People v. Blakeley* (2000) 23 Cal.4th 82, 89.)

*Conclusion*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

13

Kristi Peariso, Judge

Superior Court County of Ventura

_____

Law Office of John Derrick and John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Roberta L. Davis, Supervising Deputy Attorney General, Marc A. Kohm, Deputy Attorney General, for Plaintiff and Respondent.